Paul THOMPSON, Plaintiff–Appellee,

v.

CRESWELL INDUSTRIAL SUPPLY, INC., and Cherokee Supply Co., Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

Aug. 21, 1996.

Permission to Appeal Denied by Supreme Court Jan. 6, 1997.

Jerry H. Summers and Jimmy F. Rodgers, Jr., Summers, McCrea & Wyatt, P.C., Chattanooga, for appellants.

John P. Konvalinka and Mathew D. Brownfield, Grant, Konvalinka & Harrison, P.C., Chattanooga, for appellee.

## OPINION

McMURRAY, Judge.

This is an appeal from the judgment of the Chancery Court of Hamilton County concerning commissions allegedly due under two oral employment contracts. The plaintiff/Appellee, Paul Thompson, filed suit against Creswell Industrial Supply, Inc., and Cherokee Supply, Inc., claiming that they were obligated to pay him 35 percent of the gross sales he generated for each company during parts of 1991.[1] The defendants claimed that the plaintiff had agreed to a revision of his employment contracts concerning commissions. The Chancellor ruled for the plaintiff, and awarded damages in the amount of $1,118.75 against Creswell Industrial Supply, Inc., and $18,242.06 against Cherokee Supply, Inc. This appeal resulted. We affirm the judgment of the trial court.

The plaintiff began working for Creswell Industrial Supply in 1978 as a sales agent/representative. He worked under an oral agreement whereby he would receive a 35 percent commission on gross profits from his sales, regardless of the amount of profitability to the company. The plaintiff was hired by the company's president, Robert Creswell. The plaintiff never entered into a written employment agreement, even though other sales agents had done so. In 1988, Creswell formed Cherokee Supply, Inc. The majority stockholder in the new company was Joe Garren. The company was set up as a minority-owned business (Garren is Cherokee Indian) in order to compete for TVA contracts. In addition to his responsibilities to Creswell, the plaintiff worked as a sales agent/representative for Cherokee as well. He had a similar oral agreement with Cherokee to work for 35 percent of gross profits from his sales, regardless of their profitability.

In 1991, the defendants in an attempt to reverse declining profits instituted a new compensation structure for their sales agents/representatives. In April, 1991, Cherokee introduced a sliding scale of commission rates for its agents, providing for a maximum sales commission of 35 percent. Creswell instituted a new commission scale in September of 1991 which provided for sales incentives which, it claimed, could produce commissions greater than 35 percent. The plaintiff, however, presented testimony from another sales agent/representative that the plaintiff was in fact the only sales agent who was subject to the changes.

The plaintiff claims that he never agreed to the new scales at either company, and voiced numerous complaints about the changes in the commission calculations. The defendants submitted the testimony of four witnesses that the plaintiff had never complained about the changes. The Chancellor however rejected that testimony, and found that the plaintiff had not accepted a modification of his contracts as contended by the defendants.

Defendants present three issues for appeal:

1. Whether an employee-at-will in Tennessee working solely on a commission basis pursuant to an oral employment contract, who is given notice by his employer prior to the implementation of a new commission scale, and who continues to work for the employer after the new scale is implemented, can

---

1. Mr. Thompson died while this appeal was pending. Mr. James R. Paris, Bankruptcy Trustee in *In re: Paul Joseph Thompson,* was substituted as appellee.

still bind his employer to the original commission rate in the event he receives less money under the new scale by merely "complaining" several times to his employer about such change?

2. Whether the evidence preponderates against the trial court's finding that the appellee did not agree to the changes in how the appellants calculated the appellee's commissions?

3. Whether the trial court's award of damages to the appellee under the original contracts were [sic] excessive since the evidence revealed the failure of the appellee to fully perform all of the appellee's duties?

Our standard of review is is controlled by Rule 13(d), Tennessee Rules of Appellate Procedure. "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."

■ As to the first issue, the defendants argue that the Chancellor improperly relied upon our decision in *Balderacchi v. Ruth*, 36 Tenn.App. 421, 256 S.W.2d 390 (1952), where we held that there was no modification of an employment contract when the employer attempted to reduce the employee's compensation against the employee's will. Defendants argue that the instant case is distinguishable from *Balderacchi* in that: (1) *Balderacchi* dealt with an employer who attempted to alter a written contract; (2) the plaintiff in *Balderacchi* refused to accept the reduction in salary; (3) the plaintiff in *Balderacchi* constantly told his employer he was not accepting the new terms; (4) the plaintiff in *Balderacchi* gave his employer prompt notification of his rejection of the new terms; and (5) there was no contention by the employer in *Balderacchi* that the old contract had been terminated. We do not find any of these issues sufficiently distinguishable from the facts before us to require a rejection of the Chancellor's reliance on *Balderacchi.*

■ We find the distinction between the written contract in *Balderacchi* and the oral one in the instant case to be a distinction without a difference. Oral contracts in Tennessee are valid and binding so long as the terms are definite and certain. *See Simmons v. Foster*, 622 S.W.2d 838 (Tenn.App. 1981). We find nothing in the *Balderacchi* opinion that demonstrates that the contract was written as opposed to oral was of any consequence. We do find it significant, however, that both contracts were for indefinite terms, yet contained a definite measure of compensation.

■ The other arguments the defendants set forth as to why the Chancellor was in error in relying on *Balderacchi* regard the manner in which the plaintiff allegedly refused to accept the new compensation terms. Defendants insist that the complaints plaintiff claims to have made were not enough to equal the rejection of the new contract by the plaintiff in *Balderacchi*. As we stated in *Balderacchi*, the burden of showing the modification by mutual assent or of establishing facts either constituting an accord or forming the basis of an estoppel falls upon the defendants. *Balderacchi* 256 S.W.2d at 391–92. Defendants have failed to meet that burden. Defendants submitted the testimony at trial of four witnesses that the plaintiff did not reject the proposed revisions of his contracts. The Chancellor found that the witnesses who testified for the defendants regarding the plaintiff's acquiescence to the new terms were not credible. Indeed, there were numerous inconsistencies regarding statements the defendants' witnesses made. A trial court "on an issue which hinges on witness credibility, will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, convincing evidence to the contrary." *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn.App.1974). We find no such countervailing evidence in the record. We therefore hold that the Chancellor was correct in determining that the facts of this case are governed by *Balderacchi.*

■ The second issue deals with the Court's finding that the plaintiff did not

agree to the changes in how the defendants calculated his commissions. In *Balderacchi*, we held that a reduction of salary followed by an acceptance under protest in an employment contract does not end the original contract and create a new one with new terms. While defendants admit that an enforceable contract must result from a meeting of the minds, and that the meeting of the minds cannot be accomplished by the unilateral action of one party, they claim that if they could not unilaterally impose the new commission terms on the plaintiff without his agreement, the plaintiff could not re-impose the original contract terms on them without their agreement. We find this position to be untenable under basic principles of contract law.

The defendants do not dispute that the plaintiff had been working for some time under oral contracts whereby he was to receive 35 percent of all sales for both companies. Nor do they deny that they attempted to introduce a new compensation scheme which altered the basic terms of their agreement. What they apparently failed to comprehend was that this action amounted to an attempted unilateral alteration of the terms of the agreement. While defendants had the power to terminate the agreement (which they did not do), they did not have the power to alter the agreement without the assent of the plaintiff, which, as we have addressed, was not given. As we held in *Balderacchi*, modification of a compensation agreement in an existing contract cannot be accomplished by the unilateral actions of one of the parties. Therefore, the actions by the defendants in imposing a new compensation agreement were in fact unilateral actions to which there was no mutual assent. The defendants' argument that the plaintiff could not reimpose the original terms must consequently fail. Since the plaintiff never accepted the new terms, they never took effect, and the original terms remained in force until such time as plaintiff ceased working for the defendants.

■ The final issue raised by the defendants questions whether the damages award-ed by the Chancellor were excessive since the plaintiff allegedly failed to fully perform all of his duties. Defendants presented evidence showing that various personal problems of the plaintiff affected his sales in 1990 and 1991, and that he did not fully service his accounts as required. Defendants cite the case of *R.J. Betterton Management Services, Inc. v. Whittemore*, 769 S.W.2d 214 (Tenn. App.1988) for the proposition that it was implicit in the trial judge's discretion to determine if one party did or did not fully perform his obligations under a contract. The defendants argue that the plaintiff in the instant case did not fully perform all of his obligations under the contract, and should not have been awarded the full amount of his commission pursuant to the original contracts. We find *Betterton* to be distinguishable. *Betterton* dealt with a person who was hired to organize and run a golf tournament. Shortly before the tournament was scheduled to begin its cancellation became necessary. As a result, the plaintiff was unable to complete the job that he was hired to do. The defendants here claim that the plaintiff did not do his job to the best of his abilities due to personal problems. We think a distinction should be made between not performing well and not performing at all. While the plaintiff's work may have suffered because of personal problems, there is no evidence that he was unable to complete his duties, as was the case in *Betterton*. It is also important to note that the plaintiff was working on a commission basis. Therefore, if he did not perform his responsibilities as well as he could have, his level of pay would be affected. Yet plaintiff sued for amounts due him on sales that he had completed, not on sales that may or may not have been expected of him. We therefore affirm the Chancellor's award of damages against both defendants.

The judgment of the trial court is affirmed. Costs of appeal are adjudged against the defendants and this case is remanded to the trial court for the collection thereof.

GODDARD, P.J., and SUSANO, J., concur.