ELIZABETH DAVIS BLACK,    )    Marion Circuit
        )    No.  9719
    Plaintiff/Appellant,    )
        )
VS.    )
        )
MICHAEL WALTER BLACK,    )    Appeal No.
        )    01A01-9801-CV-00056
    Defendant/Appellee.    )

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

July 1, 1998

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF MARION COUNTY
AT JASPER, TENNESSEE

HONORABLE J. CURTIS SMITH, JUDGE

David W. Noblitt, Esq., BPR #006685
LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC
Pioneer Building, Third Floor
Chattanooga, Tennessee 37402
ATTORNEY FOR PLAINTIFF/APPELLANT


Charles G. Jenkins, Jr., BPR #014909
JENKINS & FEATHERSTON, P.C.
102 Betsy Pack Drive
Jasper, Tennessee 37347
ATTORNEY FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
BEN H. CANTRELL, JUDGE
WILLIAM B. CAIN, JUDGE

| ELIZABETH DAVIS BLACK, | ) | Marion Circuit |
|---|---|---|
| | ) | No. 9719 |
| **Plaintiff/Appellant,** | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| MICHAEL WALTER BLACK, | ) | Appeal No. |
| | ) | 01A01-9801-CV-00056 |
| **Defendant/Appellee.** | ) | |

# O P I N I O N

This appeal involves post-divorce petitions for change of custody and child support. The mother, Elizabeth Davis Black (Tepas), has appealed from the judgment of the Trial Court transferring custody of the eleven year old daughter, Chelsea, from the mother to the father, Michael Walter Black, and relieving him of the obligation of child support while the child was in the custody of the father by agreement of the parties.

The parties were divorced March 17, 1992, in Jasper, Tennessee where they had resided since their marriage. Custody of their child was granted to the mother with liberal visitation with the father. The mother moved with the child to Chattanooga, Tennessee, 50 miles from Jasper, but regular visitation with the father continued. Six months later, the mother moved to Buffalo, New York. This move was not anticipated by the parties at the time of the divorce. Frequent visitation with the father continued, including summer visitation with the father.

On October 16, 1993, the father married a lady who had a master's degree in home economics, and who readily accepted Chelsea and assisted in her care. The mother, Mrs. Tepas, also has a college degree.

In February, 1995, the parties agreed that the child would live with her father in Jasper during the school year and would visit with her mother in Buffalo during the summer. In the same year, the father relinquished a good job in Cleveland, Tennessee and established his own business in Jasper in order to have more time at home with the child.

In August, 1995, the child was sent to her father in Jasper and has resided with him ever since except for agreed visitation with her mother in Buffalo. She has completed the second and third grades in a school near Jasper. During the 1996-1997 school year, the mother requested that the father return the custody of the child to her in Buffalo. The father declined to do so.

On May 12, 1997, the father initiated the present proceeding with a petition for formal transfer of custody to him and for child support to be paid to him by the mother.

On June 17, 1997, the mother filed a counter petition requesting dismissal of the father's petition and findings of no change of circumstances and that the courts of New York have jurisdiction of custody. By amendment, the mother sought $12,220 delinquent child support.

The Trial Judge entered the judgment above summarized and the mother appealed, presenting for review the following issues:

**Appellant's Issues:**

I.     Whether the trial court erred in finding that a voluntary modification of a visitation agreement between joint-custodial parents was a substantial and material change of circumstances justifying a change of custody.

II.     Whether the trial court erred in finding that Plaintiff/Counter-Defendant/Appellant was not entitled to back child support payments.

Appellant argues that the voluntary temporary relinquishment of principal custody was not a "change of circumstances" conferring authority upon the Trial Court to change the divorce decree. The Trial Court found otherwise in a comprehensive memorandum which includes the following:

Mrs. Tepas' move from Tennessee to New York was not for vindictive purposes and the move, in and of itself, does not constitute a material change of circumstances, even though the move was not discussed at the time the custody arrangement was made. *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996). Mrs. Tepas' remarriage nor her co-habitation before marriage is, per se, a material change of circumstances.

*Tortorich v. Erickson*, 676 S.W.2d 190 (Tenn. App. 1984); *Musselman v. Acuff*, 826 S.W.2d 920 (Tenn. App. 1991).

It cannot go unnoticed that the decision to send Chelsea to Tennessee for school was initiated by Mrs. Tepas at, or near, the time she decided to co-habit with Mr. Tepas. Based on this circumstance and the credibility of the witnesses, the court concludes that Mr. Black's version of the parties' discussions at the time is correct; that is, Mrs. Tepas was having some financial and emotional difficulties in her life and thought it best Chelsea spend the school year with her father. The court finds further that Mrs. Tepas never told Mr. Black until some year or so later, that she considered the arrangement to be temporary.

The change, regardless of the reason and intent of Mrs. Tepas, was more than a change of visitation. For all practical purposes it was a change in custody. Parental roles were completely reversed, except that Mrs. Tepas paid no child support to Mr. Black, who requested none. Chelsea was placed back in the environment for most of the year, where she had lived the first five years of her life. By all accounts she is a happy and well adjusted child. She has now been a Tennessee resident seven of her nine years. All the circumstances surrounding Chelsea's return to Tennessee for the last two years do constitute a material change of circumstances in a way not reasonably contemplated at the time of the divorce.

Stability and continuity are important to a child and the environment with her father and stepmother is more conducive to that end. Chelsea has had a long association with Tennessee and Mr. Black and his wife are excellent and devoted parents and have demonstrated they can provide a stable and loving home. The court was particularly impressed with the intense dedication by Mr. and Mrs. Black to Chelsea's well-being.

Only after this litigation was filed did Mrs. Tepas and Mr. Tepas make the commitment to marriage. Mrs. Tepas made a calculated decision in 1995 in favor of her relationship with Mr. Tepas and against having her daughter with her most of the year. Mrs. Tepas is an excellent mother to Chelsea and the two have a close relationship. However, Mrs. Tepas voluntarily gave up *de facto* custody of Chelsea to pursue a relationship which only resulted in marriage just before depositions were taken in this case. This cast some doubt as to the stability of that relationship and the long-term dedication of Mr. Tepas to Mrs. Tepas and Chelsea.

The court has considered the factors set out in T.C.A. 36-6-106 in its determination of the comparative fitness of the parties to have custody. All factors are equal except (3) "the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment,"

and (4) "the stability of the family unit of the parents," which preponderate in favor of Mr. Black.

Mrs. Tepas has asked the court to enforce the provisions of the marital dissolution agreement and award her a judgment for support accrued during the time Chelsea has attended school in Tennessee. Mrs. Tepas candidly admitted she told Mr. Black not to pay support in 1995, expected none, and filed the claim because Mr. Black was playing "hardball." The proof established that while Mrs. Tepas has spent money on behalf of Chelsea during the time she has lived in Tennessee, she has not paid any support to Mr. Black.

Mr. Black testified he has spent $400 to $500 per month on behalf of his daughter since she came in 1995. The amount is in excess of the amount he would have been required to pay Mrs. Tepas based on his income since becoming self-employed. Mr. Black is entitled to a credit for the amount expended on behalf of Chelsea against the amount owed Mrs. Tepas. This calculation results in no award of back support.

It is clear from the foregoing that the Trial Judge resolved the issue of credibility in favor of the father. On an issue which hinges upon the credibility of witnesses, the Trial Court will not be reversed unless, other than oral testimony of witnesses, the record contains clear, convincing evidence to the contrary. *Thompson v. Creswell Industrial Supply, Inc.*, Tenn. App. 1996, 936 S.W.2d 955. No such contrary evidence is cited or found in this record.

Appellant argues that the Trial Court erred in considering the voluntary relinquishment of custody to be a change of circumstances. The memorandum, quoted above, clearly indicates that the decision of the Trial Court was based upon the father's version of the transfer of custody, the length of its duration, and the new domestic relationship assumed by the mother. It was the totality of the circumstances, rather than a single circumstance of "poor judgment" by the mother.

Appellant argues that she should not lose her "custodial rights" by a temporary relinquishment to please the daughter. The grant of custody does not confer a vested right, but a privilege to be enjoyed so long as faithfully exercised for the best interest of the child. The Trial Court found that the privilege had not been faithfully exercised for the best interest of the child, and the evidence does not preponderate against this finding.

Appellant argues that affirmance of the decision of the Trial Court would have a "chilling effect" upon voluntary agreements between divorced parents. If it should discourage custodial parents from relinquishment of custody under the circumstances found by the Trial Judge, its result will be beneficial rather than detrimental to the welfare of children of divorced parents.

The Trial Judge did not find the appellant to be an unfit mother. He indicated that, generally, she had been a reasonably good mother. It was her inconstancy and willingness to give her own convenience and satisfaction a higher priority which served the double purpose of providing a change of circumstances and showing that in the ultimate evaluation of two custodians, the father represented the preferable choice.

Counting the time spent in Jasper with mother and daughter before the divorce, and the time spent in Jasper with the father after the divorce, the larger part of the child's life has been spent in the familiar environment of Jasper. Now that her father no longer commutes to work, he has more time to spend at home with his daughter. She is doing well in school, is well attended by her stepmother and is looking forward to having a baby in the home which is a delight to most girls.

This court takes no satisfaction in denying the appellant's request for renewed custody. Some comfort can be taken in the clear indications that the mother-daughter bonds have not been severed and that mother and daughter have reason to expect to enjoy visits together.

Under the circumstances of the "agreed change of custody" this Court agrees that the father is not chargeable with child support for the time the child was in his custody. His Brief does not discuss his asserted claims for future child support which have apparently been abandoned.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed to the appellant. The cause is remanded to the Trial Court for further necessary proceedings.

-7-

**AFFIRMED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM B. CAIN, JUDGE