# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 2, 2001

## LORI CASTLE v. JEFFREY LEE BAKER

**Appeal from the Law Court for Sullivan County**
**No. C2118      John S. McLellan, III, Judge**

**<u>FILED SEPTEMBER 21, 2001</u>**

**No. E2000-02772-COA-R3-CV**

---

These parties were divorced in May 1992.  Custody of their daughter, Brittany, then 5 years old, was awarded to Mother pursuant to an Marital Dissolution Agreement [MDA] which obligated Father to pay $575.00 monthly support.  About three months after the divorce was granted, the custodial care of Brittany was transferred to Father, by agreement of the parties and without recourse to the Court.  In June 1998, Mother sought contempt liability against Father alleging that he was in arrears with his child support obligation in the amount of $40,800.00: at trial, the amount was stipulated to be $36,800.00.  Father responded by filing a petition for change of custody, alleging that Brittany had resided with him for several years, a material change in circumstances.  He also sought forgiveness of the arrearage. The Trial Court found a change in circumstances and awarded custody of Brittany to her father who was also credited with the monetary value of the necessities he furnished Brittany from August 1992 through February 1997.  Mother appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and Charles D. SUSANO, JR., JJ., joined.

Mark H. Toohey and Thomas R. Bandy, III, Kingsport, Tennessee, for the Appellant, Lori Castle.

John P. Chiles, Kingsport, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the Appellee, Jeffrey Lee Baker.

### OPINION

### <u>Background</u>

The parties to this suit were divorced in May 1992.  A MDA was incorporated in the judgment, which awarded the custody of Brittany, age 5, to her mother, with monthly support of

$575.00. In August, 1992, by agreement of the parties, Brittany "went to live with her father," who testified that Mother was living with an abusive man whom Brittany feared, which motivated the change in the custodial arrangement. In 1992, Father paid $1,415.00 in support. He made no further support payments until February 1997 because Brittany resided with him and he provided all of her needs.

In February 1997, Father announced his impending marriage, which resulted in some dialogue between him and Mother. They entered into another agreement, which was, as was the first, without recourse to the Trial Court, wherein they would "split visitation" half and half, with Father paying $225.00 monthly support and mother paying nothing. This arrangement remained in effect until Father remarried,[1] which apparently triggered the motion for contempt in June 1998.

## Judgment

The Trial Judge minced no words in his determination of the issue of credibility, and concluded from all the evidence that the "Father was the primary care-giver from August 1992 through February 1997," and thereafter Brittany shared equal time with her parents. He made a specific finding with respect to the support requirements of Brittany during the years she resided with her Father, and found that Father was entitled to a credit of $31,154.65 against the ordered support of $36,800.00, leaving an arrearage of $5,645.35. The Court further found that because Father was the primary care-giver for nearly five years, a significant and material change in circumstances since the divorce, joint custody of Brittany should be ordered with Father designated as the primary residential parent.

The Court further found that Mother was obligated to pay support in the amount of $440.89 per month, based on her gross annual income of $47,138.16, taking into account that she has 102.5 days visitation in excess of 80 days contemplated by the Guidelines. The Court further found that Mother owed support arrearages in the amount of $8,376.91, which accrued during the period beginning October 1998 through April 2000 at the rate of $440.89 per month. The respective arrearages were off-set, leaving a balance owing by Mother of $2,645.34 for which judgment was awarded.

Mother appeals and presents for review the issues of (1) whether the Court erred in finding a change in circumstances respecting custody of Brittany, (2) whether the Court erred in requiring Mother to pay support for Brittany "while relieving Father of his previously adjudicated responsibilities," (3) whether the amount of child support was correct.

## Analysis

It is well settled that in cases involving child custody, trial courts are afforded a great deal of discretion. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996); Tenn. Code Ann. §

---

[1] The case was heard April 13, 2000. The agreed custody-support arrangement was then in effect.

36-6-101(a)(2) (providing that the trial court "shall have the widest discretion to order a custody arrangement that is in the best interest of the child"). Consistent with this general principle, this Court's review of the trial court's judgment in a custody case is *de novo* on the record, accompanied by a presumption of correctness. ***Hass v. Knighton***, 676 S.W.2d 554, 555 (Tenn. 1984); Tenn. R. App. P. 13(d). Under this standard of review we may only reverse the decision of the trial court if it is contrary to the preponderance of the evidence. ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995).

## The Custody Issue

In Tennessee, a trial court's initial custody determination is *res judicata,* and cannot be altered unless the party seeking to change custody establishes: (1) a material change of circumstances affecting the welfare of the child; and (2) that the change of custody is in the best interest of the child. ***Adelsperger v. Adelsperger***, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997); ***Wall v. Wall***, 907 S.W.2d 829, 832 (Tenn. Ct. App. 1995); ***Musselman v. Acuff***, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Once a material change of circumstances has been shown, the court conducts a comparative fitness analysis to determine which parent is the more fit custodian.

Mother argues that there is no evidence of a substantial and material change of circumstances which harmed the child, and because such evidence is absolutely necessary to change custody the decision to change custody is erroneous.

This argument is without merit. The Trial Court found that Mother agreed to relinquish custody of Brittany to Father in August 1992; that Brittany then lived almost exclusively with Father for a period of four and one-half years, and did very well under Father's care. In making these findings, the Trial Court expressly accredited the testimony of Father and his witnesses. Because these findings are based solely on the Trial Court's assessment of the credibility of oral testimony, this Court is foreclosed from altering them. *See* ***Tennessee Valley Kaolin Corp. v. Perry***, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974) (". . . on an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary."); ***Thompson v. Creswell Indus. Supply, Inc.***, 936 S.W.2d 955 (Tenn. Ct. App. 1996).

The factual pattern in the case at Bar is not unusual. For myriad reasons the custodial parent sometimes relinquishes custody to the other parent, for months or years, as is the case here. We have ruled that a change in circumstances can occur without a showing of harm to the child, as in ***Black v. Black***,[2] and ***Hall v. Hall***.[3] The length of time Brittany lived with her Father, while obviously significant, is not controlling; the reasons for the relinquishment of custody is paramount. Here, Mother relinquished custody of her daughter because of an abusive boyfriend, and did so for nearly

---

[2] Tenn. App. LEXIS 429

[3] Tenn. App. LEXIS 350

five years during which she rarely visited Brittany. An award of custody confers no vested right "but a privilege to be enjoyed as long as faithfully exercised for the best interests of the child."[4] *See, also, Dalton v. Dalton*, 858 S.W.2d 324 (Tenn. Ct. App. 1993).

With respect to the comparative fitness analysis, the same facts – Mother's relinquishment of custody for personal reasons and her failure to visit with Brittany on a frequent basis – weigh heavily in Father's favor. Father also prevails on the "stability" factor. *See,* Tenn. Code Ann. § 36-6-106(c)(4). Since the parties' divorce, Mother has been twice married and has moved a total of four times while Father has married only once and has remained in the same house – close to his family.

The evidence does not preponderate against the judgment to change custody.

## The Support Issue

Mother argues that she should not be required to contribute to the support of Brittany, and that the Court erred in "forgiving the arrearages of Father." She advances no authority in support of her insistence that she ought not to be required to pay support, and since the issue is beyond dispute, we do not further notice it. With respect to the "forgiveness of arrearages," it is well settled that non-custodial parents may be given credit against their child support obligation for payments made on behalf of their children if such payments are for necssaries that the custodial parent either failed to provide or refused to provide. *Brownyard v. Brownyard*, 1999 WL 418352, (Tenn. App.); *Hartley v. Thompson*, 1995 WL 296202, (Tenn. App.); *Foust v. Foust*, 1992 WL 145007, (Tenn. App.); *Oliver v. Oczkowicz*, 1990 WL 64534, (Tenn. App.).

Mother argues that the Trial Court erred in giving Father credit for necessaries, citing *Benson v. Benson,* 1996 WL 284731 (Tenn. App.) In support of her assertion that the necessaries rule violates Tenn. Code Ann. § 36-5-101(a)(5) – the statute that forbids the retroactive modification of child support awards.

Mother's reliance upon *Benson* as support for this argument is not well based, because the *Benson* Court acknowledged, unequivocally, that the necessaries rule does *not* violate Tenn. Code Ann. § 36-5-101(a)(5). Specifically, the Court stated:

> One objection to this rule is that allowing credits to parents who have defaulted on their child support obligations violates Tennessee Code Annotated section 36-5-101(a)(5). *Despite this objection, the courts have held that giving parents a credit against their child support arrearages does not violate this code section. Hartley*, 1995 WL 296202, at *3; *Netherton v. Netherton*, No. 01-A-01-9208-PB00323, 1993 WL 49556, at *2 (Tenn. App. 26 Feb. 1993); *Sutton v. Sutton*, No. 180, 1991 WL 16234, at *1 (Tenn. App. 12 Feb. 1991).

---

[4]*Black, supra.*

Specifically, this court has acknowledged that the statute prohibits retroactive modifications of child support payments. As for credits, however, this court has held that they are not modifications. Instead, the credit recognizes that the obligor parent provided the support the court ordered in the first place. ***Netherton***, 1993 WL 49556, at \*2.

It cannot reasonably be argued that in the circumstances of the case at Bar, the Father is not entitled to a credit. The evidence does not preponderate against the judgment on this issue.

The judgment of the Trial Court is affirmed the case is remanded for all appropriate purposes, including collection of costs below. Costs of appeal are adjudged against Lori Castle and her surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE