# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### March 10, 2015 Session

## JANICE BUNCH v. TIFFANY JONES

### Appeal from the Circuit Court for Shelby County
### No. CT00578309     Donna M. Fields, Judge

---

### No. W2014-01161-COA-R3-CV – Filed March 30, 2015

---

This is an appeal from an award of attorney's fees following settlement of the underlying lawsuit. Appellees, law firm and attorney, represented Appellant in a lawsuit arising from an automobile accident. After protracted mediation, Appellee orally agreed to lower its contingency fee from 33 1/3% to 10% in consideration of Appellant's agreement to settle her case against the tort defendants for $52,000. Appellant agreed to accept this offer and signed the settlement agreement at the conclusion of the mediation. Thereafter, Appellant allegedly refused to sign the releases drafted by the tort defendants. The trial court, upon the tort defendants' motion, enforced the settlement agreement reached by the parties at mediation. Appellees assert that Appellant's refusal to sign the releases drafted by the tort defendants constitutes a breach of the modified fee agreement and now seek to enforce an attorney's fee lien for the full one-third of the recovery. The trial court granted Appellees' motion to enforce its lien for the full amount, and Appellant appeals. We conclude that the terms of the modified fee agreement between Appellees and Appellant only required Appellant to settle her case with the tort defendants for $52,000, which she did. Accordingly, the trial court erred in not enforcing the modified fee agreement. Reversed in part, affirmed in part, and remanded.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part, Reversed in Part and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J., and BRANDON O. GIBSON, J., joined.

William R. Bruce, Memphis, Tennessee, for the appellant, Janice Bunch.

Jeremy G. Alpert, Memphis, Tennessee, for the appellees, Oscar C. Carr, III and Glankler Brown, PLLC.

# OPINION

## I. Background

On March 18, 2009, Glankler Brown, PLLC ("Glankler") and Oscar C. Carr, III (together with Glankler, or "Appellees") entered into an engagement letter with the Appellant Janice Burch. Pursuant to the letter, Appellees agreed to represent Ms. Bunch in a personal injury lawsuit against Tiffany Jones. The underlying lawsuit arose from a December 15, 2008 automobile accident. Concerning Appellees attorney's fees, which are the subject of the instant appeal, the engagement letter provides, in pertinent part, that Appellees' attorney's fees would be "a contingency fee equal to one-third (1/3) of the gross recovery made by you on your behalf." The letter goes on to define "gross recovery" to include recovery by "settlement."

On December 11, 2009, Appellees filed suit against Tiffany Jones on Ms. Bunch's behalf. Following discovery, the parties agreed to mediate the case. The mediation was conducted on May 12, 2011. At some point during the mediation, Appellees offered to modify their attorney's fee agreed to in the engagement letter. The agreement to modify the fee schedule was set out in a May 13, 2011 letter from Mr. Carr to Ms. Bunch, stating, in relevant part: "This will also confirm that yesterday [at the mediation], in order to get the case settled, I agreed to reduce our firm's fee from 33 1/3% to 10% of the total gross recovery." Apparently, in reliance on Appellees' agreement to lower its fee to 10%, at the end of the May 12, 2011 mediation, Ms. Bunch signed the "Agreement of Essential Terms of Settlement," which provides: "If Defendants will pay $52,000 in full settlement of all claims and pay the entire mediator's fee, Plaintiff will accept it and will give a full release of all claims." Mr. Carr's May 13, 2011 letter further notes that "today [the mediator] left [Mr. Carr] a telephone message that the case had been settled for the amount you agreed to accept yesterday which was a total of $52,000 . . . ."

On July 25, 2011, unnamed defendant, GEICO General Insurance Company, filed a motion to enforce the mediation agreement/settlement, wherein it stated that "[t]his case was settled at the May 12, 2011 [mediation]. The terms of the settlement were that the Defendant Tiffany Jones . . . would pay the sum of $45,000.00 and the Plaintiff's uninsured motorist carrier GEICO . . . would pay $7,000 . . . for a total settlement of $52,000.00." Both tort defendants performed pursuant to the settlement agreement. On May 23, 2011, counsel for Ms. Jones tendered $45,000, which was received by Appellees on behalf of Ms. Bunch on May 24, 2011. Counsel for GEICO tendered $7,000 on May 25, 2011. Both tort defendants included releases and orders of dismissal with prejudice with their tender of these payments. Following receipt of the settlement funds by Appellees, Appellant never responded to Appellees' request to come into the office to sign the checks and the releases.

2

On July 27, 2011, Appellees filed a motion to withdraw as Ms. Bunch's counsel and for stay of proceedings. Therein, Appellees stated that "the interests of attorney and client have become adverse to such an extent that [Appellees] are no longer able to render effective representation." By order of September 9, 2011, the trial court allowed Appellees to withdraw. Thereafter, on October 21, 2011, Appellees filed a notice of attorney's lien pursuant to Tennessee Code Annotated Section 23-2-102, which provides that "[a]ttorneys . . . of record who begin a suit shall have a lien upon the plaintiff's . . . right of action from the date of the filing of the suit." In its notice of attorney's lien, Appellees argue, in relevant part, that:

> With regard to attorney fees incurred by Glankler Brown . . . Glankler Brown and Plaintiff Janice L. Bunch entered into a written engagement agreement on or about April 7, 2009. Pursuant to the agreement, Glankler Brown . . . was to be paid a contingency fee equal to one-third (1/3) of the gross recovery made by Plaintiff . . . . At the May 12, 2011 mediation of this action, Oscar C. Carr, III of Glanker Brown . . . agreed to discount the firm's legal fees from the one-third (1/3) contingency fee agreement very substantially which agreement was contingent upon Plaintiff's agreement to accept the defendants' settlement offer resulting from mediation. Mr. Carr's agreement to do so was made in a good faith attempt to obtain for Plaintiff a larger net settlement. Because Plaintiff refused to accept a settlement of the case as a result of the mediation, Glanker Brown's agreement to accept a reduced attorney fee no longer exists because Plaintiff voluntarily first breached the agreement by refusing to accept a settlement as a result of the mediation . . . .

Accordingly, Appellees sought an attorney's lien equal to one-third (1/3) of the $52,000 gross recovery, or $17,333.33.

On April 11, 2012, the trial court entered an order, granting the defendants' motion to enforce the settlement agreement. Therein, the trial court found, in relevant part that

> Dr. Bunch was not under duress when she executed the settlement agreement and that she entered into the settlement agreement on her own free will. The Court finds that the Plaintiff had a choice to enter into the settlement agreement or she could have rejected the agreement if she desired. The Court finds that she voluntarily entered into the settlement agreement with the Defendants. Therefore, the Plaintiff's settlement agreement is enforceable.

3

On April 27, 2012, the trial court entered an order granting the tort defendants' motion to deposit the settlement funds with the court. In early May 2012, the tort defendants deposited $52,000 into the Registry of the Court. Ms. Bunch appealed. After several extensions, by order of January 22, 2014, this Court dismissed the appeal on January 22, 2014.

On January 31, 2014, Appellees filed a motion to enforce the attorney's lien in the trial court, seeking an award of $3,182.79 in litigation costs and expenses and a $17,333.33 contingency fee from the proceeds deposited with the court. Appellees' motion was heard by the trial court on February 14, 2014 and May 2, 2014. By order of May 13, 2014, the trial court granted Appellees' motion to enforce its attorney's lien and awarded Appellees $20,516.12 in attorney's fees and litigation costs, plus post-judgment interest thereon at the statutory rate of 5.25%.

## II. Issues

Ms. Bunch appeals. She raises three issues for review as stated in her brief:
1. Whether the trial court erred in failing to find enforceable a modified contingency fee agreement between Appellant and Appellees wherein Appellees agreed to reduce their attorney fee on Appellant's underlying tort case to 10% of the gross recovery "in order to get the case settled"?

2. Whether the trial court erred in failing to find that promissory estoppel precluded Appellees from asserting a right to avoid their promise to reduce their attorney fee to 10% of the gross recovery "in order to get the case settled" since Appellant acted in reliance on that promise by executing a written offer to settle the underlying tort claim and Appellant was held to that written offer?

3. Whether the trial court erred in ordering enforcement of Appellees' claimed attorney lien instead of finding that Appellees breached the modified contingency fee agreement by seeking court enforcement of an attorney lien for a full one-third of the gross recovery instead of the agreed 10%?

## III. Standard of Review

The issue of Appellees' attorney fees was tried by the court, sitting without a jury. The issues here further involve questions sounding in contract. The applicable standard of review was succinctly set out in the case of *Edmunds v. Delta Partners, LLC, et al.*, 403 S.W.3d 812 (Tenn. Ct. App. 2012):

This action was tried by the trial court without a jury. As such, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is de novo. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn.2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000)).

For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *4215 Harding Road Homeowners Ass'n v. Harris*, 354 S.W.3d 296, 305 (Tenn.Ct.App.2011); *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn.Ct.App.2000). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn.1999).

\*                    \*                    \*

The interpretation of a contract is a question of law. *Guiliano v. Cleo, Inc*., 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contractual document is not entitled to a presumption of correctness on appeal. *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). However, the determination of whether a breach has occurred is a question of fact. *Carter v. Krueger*, 916 S.W.2d 932, 934-35 (Tenn. Ct. App.1995) ("This is a matter of fact which is properly addressed to the trier of fact.").

*Id*. at 821-22.

## IV. Analysis

The gravamen of this case is whether the Appellees and Ms. Bunch have an enforceable modification of the original engagement agreement. If so, the question is whether any action or inaction on Ms. Bunch's part constituted a breach of that modified contract so as to nullify it. We begin with the question of modification.

It is well settled that contracts may be modified by mutual assent to the changed terms. *Edmunds*, 403 S.W.2d at 823 (citing *Thompson v. Creswell Industrial Supply, Inc.*, 936 S.W.2d 955, 957 (Tenn. Ct. App. 1996)). Here, after some nine hours of mediation, Mr. Carr made an oral offer to lower his fee to 10% in an effort to settle the matter and to procure more funds for Ms. Bunch. It is well settled that written contracts

may be orally modified. In ***Lancaster v. Ferrell Paving, Inc.***, 397 S.W.3d 606 (Tenn. Ct. App. 2011), this Court explained:

> "A modification to a contract is a change to one or more contract terms which introduces new elements into the details of the contract, or cancels some of them, but leaves the general purpose and effect of the contract undisturbed." ***Constr. Crane & Tractor, Inc. v. Wirtgen Am., Inc***., No. M2009–01131–COA–R3–CV, 2010 WL 1172224, at *10 (Tenn. Ct. App. Mar. 24, 2010) (quoting ***Interstate Marketing Corp. v. Equipment Servs., Inc***., No. M2005–00208–COA–R3–CV, 2006 WL 1547867, at *4 (Tenn. Ct. App. Jun. 6, 2006)). After a written contract is made, it may be modified by the express words of the parties in writing or by parol, where both parties consent to such modifications. ***In re Estate of Nelson***, No. W2006–00030–COA–R3–CV, 2007 WL 851265, at *18 (Tenn. Ct. App. Mar. 22, 2007) (citing ***Galbreath v. Harris***, 811 S.W.2d 88, 91-92 (Tenn. Ct. App.1990)). "A party's agreement to a modification need not be express, but may be implied from a course of conduct . . . ." ***Constr. Crane & Tractor, Inc.***, 2010 WL 1172224, at *10 (citing ***Galbreath***, 811 S.W.2d at 91; ***Cooperative Stores Co***., 195 S.W. at 180).

*Id*. at 611-12.

We note that the trial court did not make any specific findings concerning the enforceability of the parties' modified contingency fee agreement. Accordingly, our review of that question is *de novo*, and we will conduct our own independent examination of the appellate record. ***Edmunds***, 403 S.W.3d at 822. It is well settled that "[a] contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy, and sufficiently definite to be enforced.'" ***Doe v. HCA Health Services of Tennessee, Inc.***, 46 S.W.3d 191, 196 (Tenn. 2001) (citing ***Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local #3-677***, 811 S.W.2d 875, 879 (Tenn. 1991) (internal citation omitted)).

Although the distinction is subtle, we must keep in mind that, in this appeal, we are concerned with the modified agreement between Appellees and Ms. Bunch. In other words, any agreement or settlement that Ms. Bunch entered with the tort defendants is irrelevant to this appeal except to the extent that Ms. Bunch's obligations under such agreement(s) are also required of her under her modified contract with Appellees. For example, the "Agreement of Essential terms of Settlement" is not an agreement between Ms. Bunch and the Appellees; rather, it is an agreement between Ms. Bunch and the tort defendants. As set out above, for payment of $52,000, Ms. Bunch agreed to "give full

release of all claims" against the tort defendants. Under the settlement agreement, Ms. Bunch has no contractual obligation to Appellees, only to the tort defendants. Ms. Bunch's obligation to Appellees is a separate agreement, memorialized in Mr. Carr's May 13, 2011 letter, which states that "in order to get the case settled, I agreed to reduce our firm's fee . . . ." Based upon this language, it is Ms. Bunch's settlement of the case that Appellees bargained for in exchange for lowering their fee. In this regard, there was a meeting of the minds, mutual consideration, and sufficient explicitness of the contract terms to enforce the parties' modification of their original fee schedule. The question, then, is whether Ms. Bunch breached her obligation under the modified contract to settle the case against the tort defendants.

There can be little doubt that Appellees received the benefit of their bargain in this case, which was the $52,000 settlement. Ms. Bunch was also held to the terms of the settlement when the trial court enforced the settlement agreement, awarding Ms. Bunch $52,000 and dismissing her claims against the tort defendants with prejudice. In short, there is no doubt that this case was, in fact, settled.

However, when Ms. Bunch allegedly refused to sign releases (in favor of the tort defendants), Appellees argue that this refusal constitutes a breach by Ms. Bunch of the contract she had entered with the Appellees. Specifically, in seeking to recoup the full measure of fees that was contemplated in the original engagement letter, i.e., 33 1/3% of any settlement, Appellees argue that their subsequent agreement to take 10% in fees "was contingent upon [Appellant's] agreement to accept the . . . settlement offer resulting from mediation." "Because [Appellant] refused to accept a settlement of the case as a result of mediation," Appellees aver that their "agreement to accept a reduced attorney fee no longer exists . . . ." We disagree. As discussed above, Ms. Bunch's obligation under the contract with the Appellees was to settle the case. This she did. Any obligation to release the tort defendants was due to the tort defendants under the settlement agreement and was not owed to Appellees. Any failure of Ms. Bunch to execute a release could have only been enforced by the tort defendants, who were owed this duty under the settlement agreement. Regardless, it appears that any breach of the settlement agreement *vis-a-vis* the tort defendants was cured upon the trial court's dismissal of Ms. Bunch's claims against them with prejudice.

Having determined that the modification of the parties' contract was enforceable and that Ms. Bunch satisfied her sole requirement thereunder to settle the case against the tort defendants, we pretermit Appellant's second issue concerning promissory estoppel.

Concerning Appellant's third issue that Appellees should be denied any fees based upon Appellant's allegation that Appellees breached the parties' agreement by filing a lien for attorney's fees, we have reviewed the record and find no clear evidence that

Appellees, although incorrect in their argument, acted in bad faith in seeking fees in this case, or that there was any prohibition in the parties' agreement to preclude Appellees from seeking such enforcement. Accordingly, we decline to disgorge Appellees of any fee in this case. However, based upon the foregoing analysis, we conclude that Appellees are only entitled to attorney's fees equal to 10% of the gross settlement amount of $52,000., or $5,200, plus $3,182.79 in litigation costs and expenses.

For the foregoing reasons, we reverse the trial court's award of $17,333.33 in attorney's fees and remand the case for entry of judgment in favor of Appellees for $5,200 in attorney's fees plus their expenses in the amount of $3,182.79 and for any further proceedings that may be necessary and are consistent with this opinion. The order of the trial court is otherwise affirmed. Costs of the appeal are assessed against the Appellees, Glankler Brown, PLLC, Oscar C. Carr, III, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE