FILED
07/28/2022
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 15, 2021 Session

### ROBERT L. BAKER ET AL. V. BRETT ELDREDGE ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 20-445-III        Ellen Hobbs Lyle, Chancellor**

—————————————————————

### No. M2021-00072-COA-R3-CV

—————————————————————

The former manager of a country music recording artist sued the artist and related business entities for breach of contract and unjust enrichment. He also sought damages from the artist's business manager for inducement of breach of contract. The defendants moved for summary judgment. They argued, in part, that the undisputed facts showed that the parties had mutually agreed to modify the contract. And the former manager had been paid in full under the terms of the modified contract. The trial court granted summary judgment to the defendants and dismissed the complaint with prejudice. On appeal, the manager argues that genuine issues of material fact as to whether he agreed to modify the contract preclude summary judgment. We conclude that the unambiguous course of dealing between the parties showed mutual assent to the modification. So we affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

Stephen J. Zralek, Mandy Strickland Floyd, Bethany Vanhooser, and Shea Thomas Hasenauer, Nashville, Tennessee, for the appellants, Robert L. Baker and RLB Artist Management, LLC.

John R. Jacobson and Carson W. King, Nashville, Tennessee, for the appellees, Brett Eldredge, Brice Eldredge, One O'Clock Road, Inc., and Paris Not France, Inc.

# OPINION

## I.

### A.

Brett Eldredge is a country music singer, songwriter, and producer. From 2011 to 2018, Robert Baker managed his career. After the artist ended the management relationship, Mr. Baker and his limited liability company sued Brett Eldredge and related business entities for breach of contract and unjust enrichment. The complaint also included claims for statutory and common law inducement of breach of contract against Brice Eldredge, the artist's brother and business manager.

According to the allegations in the complaint, in 2017, Brice[1] proposed changing the compensation structure in Mr. Baker's contract. Mr. Baker rejected the proposal. But Brice told his brother that Mr. Baker had agreed. From then on, the defendants paid Mr. Baker less than the full amount owed under his contract.

After discovery, the defendants moved for summary judgment. Among other things, they argued that Mr. Baker's contract was modified by mutual assent. Mr. Baker maintained that factual disputes precluded the grant of summary judgment.[2]

### B.

Moving for summary judgment, the defendants relied on the following undisputed facts.[3] In 2013, Brett and Mr. Baker orally agreed to a new management deal.[4] As compensation for Mr. Baker's services, Brett agreed to a 15% commission on his gross revenue from all sources other than publishing. Either party could terminate the agreement at will, subject to a 12-month sunset clause. The sunset clause obligated Brett to continue paying commissions to Mr. Baker for 12 months after termination of the agreement. From

---

[1] For clarity, we refer to the defendants, Brett Eldredge and Brice Eldredge, by their first names. No disrespect is intended.

[2] In the trial court, Mr. Baker also filed a cross motion for partial summary judgment on liability, which was denied. On appeal, he only challenges the trial court's grant of the defendants' summary judgment motion.

[3] Some facts are undisputed only for purposes of ruling on the motion for summary judgment. *See* TENN. R. CIV. P. 56.03.

[4] Mr. Baker had previously managed Brett's career as an employee of Violator Nashville, an artist management company. According to Mr. Baker, Brett's management contract with Violator Nashville expired in 2013.

December 2013 to March 2017, Mr. Baker was paid in accordance with the 2013 agreement.

In 2016, Brett hired Brice as his business manager. Brice "started waiving a red flag about financial constraints heading into 2017." He invited Mr. Baker's input on how to reduce the artist's overall expenses. Brice and Brett also discussed renegotiating commissions for the multiple agents who worked for the artist. In 2017, Brice and Mr. Baker met twice to discuss proposed changes to Mr. Baker's compensation.

At their February meeting, Brice told Mr. Baker that "Brett was looking to restructure all commission buckets" to alleviate financial pressures. And he proposed changing Mr. Baker's commission from 15% of gross income to 15% of net operating income. Mr. Baker rejected the proposal. As he saw it, Brett was trying to "fix the . . . leak[ ] in net operating income all on his back." Brice conveyed Mr. Baker's objections to Brett.

The next month, Brice sent Mr. Baker a memo outlining a new commission structure to take effect as of January 1, 2017. The 2017 memo provided that Brett would pay Mr. Baker a 15% commission on net operating income plus a 5% commission on publishing revenue and an increased percentage of SoundExchange royalties.

At Mr. Baker's request, the two men met again on April 20, 2017, to discuss his "permanent commission structure." Brice told Mr. Baker that "[the 2017 memo] was the deal based on my conversations with Brett." Mr. Baker thanked Brice for "asking Brett for more money." After the meeting, Brice told Brett that Mr. Baker had agreed to the new compensation terms.

From March 2017 to September 2018, the defendants paid Mr. Baker as detailed in the 2017 memo. The payments were deposited directly into Mr. Baker's bank account. Mr. Baker also received monthly statements explaining how the payments were calculated. Mr. Baker knew that the defendants were paying him under the new commission structure. And he accepted the modified payments for 17 months.

Mr. Baker never protested the change to his compensation in writing. After the April meeting, he never voiced any objections to the new payment terms to Brice even though the two men spoke almost daily. Nor did he speak to Brett about the changes, other than one conversation "tangentially related" to his compensation in August 2018.

Brett terminated Mr. Baker's contract in September 2018. After the termination, Mr. Baker contacted Brett about the sunset clause, but did not otherwise indicate that he was being paid incorrectly. As required, Brett continued to pay Mr. Baker for 12 months after the termination date.

Relying primarily on his own testimony, Mr. Baker argued that genuine issues of material fact precluded the grant of summary judgment in the defendants' favor. The defendants admitted that Mr. Baker never expressly accepted the deal at the April meeting. Mr. Baker went even further. He claimed that he rejected the proposed change in April and made two counterproposals. This "put the ball in Brice's court to go talk to Brett about the changes that I wanted to see." He left the ball in the defendants' court for the next year and a half. As Mr. Baker recounted, "Brett and I'd had other moments where—or other issues that we had taken months or years to resolve. And the fact that this was taking time wasn't a factor for me at all."

Mr. Baker also stressed that his acceptance of the modified payment amounts was not intended as acceptance of the proposed modification. He explained, "Well, I was going to accept the payments. I did accept the payments. Not in acceptance of the deal. He was paying me less than he owed me. He owed me at least that much money. And it turns out he owed me a whole lot more." He believed that he protested his change in pay to Brett at least once. He also told several third parties that he was being underpaid.

C.

The trial court ruled that the 2013 contract had been modified by mutual assent. The court reasoned that the defendants' inability to establish express assent did not preclude summary judgment. Mutual assent may be established through course of dealing. Here, the undisputed proof showed that, after the April meeting, Mr. Baker accepted the modified payments consistent with the modified contract for 17 months without protest.

The factual dispute over what was said at the April meeting was, in the court's eyes, immaterial. Mr. Baker's subsequent conduct objectively manifested his assent to the modified compensation terms. And this unambiguous course of dealing continued for a prolonged period. Confronted with the defendants' evidence, Mr. Baker had to come forward with countervailing evidence, such as "constant refusal[s] to accept the modification," or "numerous complaints," or "formal, official letters of disagreement." He did not. So the defendants were entitled to a judgment in their favor as a matter of law.

The court also dismissed Mr. Baker's remaining claims. His compensation claim was governed by a valid contract. So Mr. Baker could not recover under an unjust enrichment theory. As there had been no breach of contract, the claims for inducement of breach of contract were rendered moot.

## II.

### A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *See Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

We view all of the evidence in the light most favorable to the nonmoving party, including resolving all inferences to be drawn from the facts in that party's favor. *See Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion and that conclusion entitles the moving party to a judgment, then the trial court's grant of summary judgment will be affirmed. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

### B.

A contract cannot be modified by the unilateral action of one party. *Balderacchi v. Ruth*, 256 S.W.2d 390, 391 (Tenn. Ct. App. 1952). "There must be the same mutuality of assent . . . as required to make a contract." *Id.* We judge mutual assent using an objective standard. *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). We look to the parties' outward manifestations, not their secret intent. *See id.* But we assess the parties' words and conduct in light of the surrounding circumstances. *See Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local No. 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991). In other words, if a reasonable onlooker, based on the parties' objective manifestations, would conclude that both parties agreed to the modification, mutual assent has been established. *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007).

Assent to a contract modification may be implied from the parties' course of dealing. *Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 611-12 (Tenn. Ct. App. 2011) (citations omitted). But we will not infer mutual assent based on "an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed." *Balderacchi*, 256 S.W.2d at 391.

The defendants bore the burden of proving that the contract was modified. *See id.* at 391-92. They came forward with evidence showing that Mr. Baker objectively manifested assent to the modification after the April meeting. Mr. Baker admitted that he knew his commission was being calculated under the new commission structure. And he accepted the modified payments for at least 17 months. During that time, he never objected to the compensation changes or insisted that the defendants comply with the terms of the 2013 contract.

Faced with a properly supported motion for summary judgment, it was incumbent on Mr. Baker to set forth specific facts in the record "establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact." *Byrd*, 847 S.W.2d at 215. Mr. Baker maintains that he rejected Brice's proposal and made two counter proposals at the April meeting. The defendants dispute his claim. But this factual dispute does not preclude summary judgment. *See id.* at 214-15 (explaining that not all facts are material and not all factual disputes are genuine for purposes of Rule 56). We accept Mr. Baker's testimony as true. *See id.* at 215. Still, his subsequent conduct objectively signaled his assent to the modified compensation terms. Mr. Baker continued to manage Brett's career. Brett paid him in accordance with the 2017 compensation memo. And Mr. Baker accepted those payments without further protest. *See Staubach Retail Servs.-Se., LLC*, 160 S.W.3d at 525 (noting that one party's acceptance of payment demonstrated its acceptance of the contract terms).

Mr. Baker insists that he never intended to accept the modified compensation terms when he accepted the payments. Yet a party's conduct may manifest assent "even though he does not in fact assent." RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 1981); *see Rode Oil Co. v. Lamar Advert. Co.*, No. W2007-02017-COA-R3-CV, 2008 WL 4367300, at *9 (Tenn. Ct. App. Sept. 18, 2008) ("Unless the other party has reason to know of it, contract law does not typically credit a claim that, in spite of a party's objective manifestations of assent, it subjectively did not intend to be bound.").

We will not imply assent when the record demonstrates that the disputed payments were accepted under protest. *See Balderacchi*, 256 S.W.2d at 391-92 ("There was no modification since the proof clearly shows that plaintiff protested and promptly notified defendant that the full salary would be claimed."). In *Balderacchi v. Ruth*, it was undisputed that the employee "constantly told [his manager] that he was not being paid as his contract stipulated." *Id.* at 391. And he repeatedly insisted that his employer "pay him

6

the difference in the amounts." *Id.* Similarly, in *Thompson v. Creswell Indus. Supply, Inc.*, 936 S.W.2d 955 (Tenn. Ct. App. 1996), the proof showed that the employee "voiced numerous complaints about the changes in the commission calculations." *Id.* at 956. And in *E & A Ne. Ltd. P'ship v. Music City Rec. Distribs., Inc.*, No. M2005-01207-COA-R3-CV, 2007 WL 858779, (Tenn. Ct. App. Mar. 21, 2007), the record contained multiple letters between the parties in which the plaintiff noted the incorrect payments and urged the defendant to remit the full amount owed. *Id.* at *1-2.

This record shows the opposite. After the April meeting, Mr. Baker never objected to the changes in his commission structure. He never sent a letter, an email, or a text message about his concerns. Nor did he broach the subject with Brice. And he could recall only one conversation with Brett that even touched on the 2017 changes.[5] He told Brett that Brice had changed his pay. Yet he did not insist that Brett honor the terms of the 2013 contract. And he could not specifically recall telling Brett he objected to the changes. Complaining to third parties is but a poor substitute for direct protest.

Mr. Baker also argues that we should view the parties' course of dealing through a wider lens. Early in his career, Brett deferred payment of management commissions due to lack of sufficient funds. According to Mr. Baker, he went almost 22 months without pay before Brett fulfilled his contractual obligation. So his extended silence was reasonable under the circumstances. But these events occurred before the parties entered the 2013 contract. We do not find them relevant here.

This record does not demonstrate "an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed." *Balderacchi*, 256 S.W.2d at 391. After his initial protests, Mr. Baker gave no outward indication that he objected to the new compensation terms. *See Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002) (Mutual assent "may be manifested, in whole or in part, by the parties' spoken words or by their actions or inactions."). A reasonable onlooker, viewing this evidence, could only conclude that the 2013 contract was modified by mutual assent.

Based on the undisputed facts, the defendants were entitled to a judgment as a matter of law on the breach of contract claim and the claims for inducement of breach of contract. We also affirm the dismissal of Mr. Baker's unjust enrichment claim. Mr. Baker claims

---

[5] Mr. Baker maintains that he complained about his changed pay to Brett in August 2018. He admits that the conversation was "really about working . . . or partnering with a new management company." In that context, he explained that other managers would require Brett "to pay 15%." He made it clear to Brett that Brice had changed his compensation from gross to net. And he told him, "that won't work in another deal." In response to Brett's comment that managers were overpaid, Mr. Baker said, "I work really hard for my money" or "I'm worth my money" or "[s]omething along those lines." We are not persuaded that Mr. Baker's comments could reasonably be construed as a protest.

that the defendants were unjustly enriched when they failed to pay him the full amount of compensation he was owed for his management services. Unjust enrichment is not an available theory of recovery when a valid contract exists between the parties. *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998).

## III.

The parties' objective manifestations showed their mutual assent to the contract modification. There was no breach of contract. Based on the undisputed facts, the defendants were entitled to a judgment as a matter of law. So we affirm.

    s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE
