IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 7, 2004 Session

## STAUBACH RETAIL SERVICES-SOUTHEAST, LLC v. H. G. HILL REALTY CO.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 01-3292-II    Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2002-02661-SC-R11-CV - Filed March 22, 2005**

_____

We granted this appeal to determine whether an unexecuted brokerage agreement incorporated into an executed lease constitutes an enforceable contract, thereby requiring payment of a brokerage fee to one of the real estate brokers who provided services pursuant to the unexecuted agreement. We conclude that all parties to the brokerage agreement assented to its terms and that the brokerage agreement's "occupancy" requirement was satisfied. Accordingly, we hold that the agreement is enforceable, and we affirm the Court of Appeals' award of the unpaid commission to the real estate broker.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed;**
**Remanded to the Trial Court**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and WILLIAM M. BARKER, JJ., and ALLEN W. WALLACE, SP.J., joined.

Barbara Hawley Smith and Eugene N. Bulso, Jr., Nashville, Tennessee, for the Defendant-Appellant, H. G. Hill Realty Co.

Brigid M. Carpenter and Glenn D. Tackett, Jr., Nashville, Tennessee, for the Plaintiff-Appellee, Staubach Retail Services-Southeast, LLC.

## OPINION

H. G. Hill Realty Company ("H. G. Hill") owned a tract of real property in Nashville, Tennessee. H. G. Hill retained a broker, Southeast Venture, LLC ("Southeast Venture"), to locate a long-term tenant for the property. Staubach Retail Services-Southeast, LLC ("Staubach") contacted Southeast Venture and expressed an interest in the property on behalf of its client, dekor, Inc. ("dekor"), a home improvement retailer based in Georgia.

On February 23, 2000, H. G. Hill and dekor entered into a "Build-to-Suit Retail Lease" ("lease") in which H. G. Hill agreed to construct an 80,000 square-foot building for dekor's use as a retail store. Article 44 of the lease provided that:

> Landlord covenants and agrees to pay Broker's commission *in accordance with a separate agreement executed by and between Landlord and Broker*, and further agrees to indemnify Tenant for all claims and demands made by Broker. . . .*The terms and provisions of that certain Brokerage Agreement, an unexecuted photocopy of which is attached hereto as Exhibit "N" and incorporated herein by reference, are incorporated into this Lease and made a part hereof.*

(emphasis supplied.)

Exhibit "N" of the lease provides that H. G. Hill, Southeast Venture, and Staubach entered into a "Brokerage Agreement" in anticipation of the lease. According to the brokerage agreement,

> [t]he Owner agrees to pay a leasing commission of Five Hundred Thousand Dollars ($500,000.00) to the Broker and Co-Broker, for the development of an 80,000 square foot retail building[.] . . . The leasing commission shall be payable one-half upon execution of the lease and one-half upon occupancy of the Property by the Tenant.

Consistent with Article 44, the signatures of the parties' representatives do not appear on Exhibit "N."

H. G. Hill satisfied the first installment of the leasing commission by paying $125,000 to Southeast Venture and $125,000 to Staubach. Pursuant to the lease agreement, dekor readied the building for retail use, accepting delivery of store fixtures, hiring employees, and installing locks. However, dekor did not open the store for business and defaulted on the lease before paying the first month's rent. On September 21, 2001, H. G. Hill and dekor entered into an agreement providing for termination of the lease in return for a payment of $1,275,000 by dekor.[1]

Staubach filed an action against H. G. Hill seeking to enforce the terms of the brokerage agreement either as a party to the agreement or as a third-party beneficiary of the lease. Staubach filed a motion for summary judgment, claiming that it was entitled to its portion of the second installment of the commission because dekor had occupied the building prior to default on the lease. The trial court granted Staubach's motion and ordered H. G. Hill to pay Staubach its portion of the second installment of the brokerage commission.

---

[1] The parties have neither briefed nor argued the effect of this settlement upon the rights of the parties. Accordingly, we express no opinion as to the effect of this settlement.

On appeal, the Court of Appeals affirmed the trial court's judgment. The intermediate appellate court concluded that H. G. Hill assented to the terms of the brokerage agreement attached to the lease by executing the lease agreement. The Court of Appeals further concluded that Staubach was entitled to its portion of the second installment of the leasing commission because dekor occupied the building prior to defaulting on the lease. We granted review.

## ANALYSIS

A contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." Doe v. HCA Health Servs. of Tenn., Inc., 46 S.W.3d 191, 196 (Tenn. 2001) (citations omitted). In determining mutuality of assent, courts must apply an objective standard based upon the parties' manifestations. T.R. Mills Contractors, Inc. v. WRH Enters., LLC, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002).

A determination of the parties' intentions generally involves a question of law appropriate for summary judgment provided that the moving party has established the absence of a genuine issue as to any material fact. See Tenn. R. Civ. P. 56.04; Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002). In reviewing the trial court's grant of summary judgment, this Court must review the record de novo without a presumption of correctness. See Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000).

Although the lease refers to a "separate agreement executed by and between Landlord and Broker," the parties never executed a separate agreement. The only evidence of an agreement between H. G. Hill, Staubach, and Southeast Venture is the unexecuted agreement attached to the lease. However, a written contract is not required to be signed to be binding on the parties. T.R. Mills Contractors, Inc., 93 S.W.3d at 865. Moreover, H. G. Hill signed a lease agreement expressly incorporating the terms of the unexecuted brokerage agreement. This Court has previously held that a writing may be incorporated by reference into a written contract, thereby requiring both writings to be construed together. See McCall v. Towne Square, Inc., 503 S.W.2d 180, 183 (Tenn. 1973). Because the terms of the lease expressly incorporated the unexecuted brokerage agreement into the lease, the language of the brokerage agreement (Exhibit "N") became a part of the lease. By signing the lease, H. G. Hill accepted the terms of the brokerage agreement.

In an attempt to create a genuine issue of material fact, H. G. Hill submitted to the trial court affidavits of James W. Granberry ("Granberry"), its Executive Vice President of Development, and Celeste Patterson ("Patterson"), its Chief Financial Officer, in which they maintained that they did not assent to the unexecuted brokerage agreement attached to the lease. These affidavits further state that H. G. Hill agreed that the second installment of the commission would be due when dekor began paying rent, an event that did not occur. The parol evidence rule does not permit contracting parties to "use extraneous evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract." GRW Enters. v. Davis, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990). Furthermore, to allow a party to a contract to admit that the party signed the contract but to deny that the terms of the

-3-

contract express the party's agreement would destroy the value of contracts. See Giles v. Allstate Ins. Co., 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993). H. G. Hill could have refused to sign the lease if it disagreed with the terms of the brokerage agreement attached to the lease. Instead, H. G. Hill paid the first installment of the commission in accordance with the terms of the brokerage agreement, thus expressing its assent to its terms.

Similarly, Staubach and Southeast Venture demonstrated their assent to the brokerage agreement. Although Staubach did not sign the brokerage agreement, its assent to the agreement is demonstrated by its action to enforce the agreement. See Hillard v. Franklin, 41 S.W.3d 106, 112 (Tenn. Ct. App. 2000). Southeast Venture's acceptance of its share of the first installment of the commission demonstrates Southeast Venture's acceptance of its terms. See T.R. Mills Contractors, Inc., 93 S.W.3d at 866 (noting that assent may be established by the parties' course of dealings). When a party who has not signed a contract demonstrates its assent by performing pursuant to the contract and making payments conforming to the contract's terms, that party is estopped from denying the binding effect of the contract. Id. at 866; see Hoyt v. Hoyt, 372 S.W.2d 300, 305 (Tenn. 1963); R.J. Betterton Mgt. Servs., Inc. v. Whittemore, 769 S.W.2d 214, 216 (Tenn. Ct. App. 1988).

The evidence establishes that all three parties to the unexecuted brokerage agreement assented to its terms. Thus, we conclude that the brokerage agreement is a binding contract under which Staubach may recover its portion of the second installment of the commission if the contract's conditions were satisfied.[2]

Although the brokerage agreement requires payment of the second installment of the commission "upon occupancy," the term "occupancy" is not defined in either the brokerage agreement or the lease. However, we are unable to conclude that the term is ambiguous. A contract term is not ambiguous merely because the parties to the contract may interpret the term in different ways. See Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn. 2001).

We are required to ascertain the intention of the parties by using the usual, natural, and ordinary meaning of the language contained in the contract. Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999). Black's Law Dictionary 1108 (8th ed. 2004) defines "occupancy" in part as "the act, state or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, esp[ecially] of a dwelling or land." Furthermore, "the term denotes whatever acts are done on the land to manifest a claim of exclusive control and to indicate to the public that the actor has appropriated the land." Id.

In the months prior to its breach, dekor arranged for the installation of fixtures, an energy management system, lighting, an audio system, and a security system. During the spring of 2001, the construction company's locks were removed, and dekor's locks were installed. The company

---

[2] Staubach further maintained it could recover its portion of the second installment of commission under the lease as a third-party beneficiary. Because we have determined that Staubach may recover as a party to the brokerage agreement, we need not address this issue.

accepted delivery of store fixtures and shelving valued at more than $100,000 as well as kitchen equipment for display purposes. The company hired a general manager, who conducted interviews at the store and hired nine employees to serve as the store's managerial staff. In addition, during late May and early June of 2001, the general manager went to the building on a daily basis. We conclude these facts are sufficient to establish dekor's "occupancy" of the premises prior to termination of the lease, thus satisfying the terms of the brokerage agreement.

## CONCLUSION

We hold that the unexecuted brokerage agreement is a valid contract to which H. G. Hill, Staubach, and Southeast Venture demonstrated their assent and that dekor occupied the premises prior to the termination of the lease. Accordingly, Staubach is entitled to one-half of the second installment of the commission from H. G. Hill. We affirm the judgment of the Court of Appeals, which affirmed the trial court's granting of summary judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

The costs of appeal are assessed to the appellant, H. G. Hill Realty Co., and its sureties for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE