IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 14, 2015 Session

**STATE OF TENNESSEE v. DONALD EDWARD DANIEL**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-A-493      Steve Dozier, Judge**

**No. M2014-02048-CCA-R3-CD – Filed September 16, 2015**

The defendant, Donald Edward Daniel, appeals his Davidson County Criminal Court bench conviction of violating an order of protection pursuant to Tennessee Code Annotated section 39-13-113, contending that the trial court's interpretation of the order of protection was overly broad and that the evidence was insufficient to support his conviction. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Jonathan L. Miley, Nashville, Tennessee (on appeal), and Fannie J. Harris, Nashville, Tennessee (at trial), for the appellant, Donald Edward Daniel.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Jennifer Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Before discussing the evidence presented at trial, we will describe the legal position of the parties at the time the alleged incident occurred. The conviction in this case arose from events that transpired between the defendant and his estranged wife, Teairy Daniel. The defendant filed for divorce in 2012. Shortly after receiving the divorce summons, Ms. Daniel petitioned the court for an order of protection against the defendant. The petition was granted on October 29, 2012, and an order of protection was entered against the defendant for a period of one year. The order directed the defendant to "not come about the Petitioner (including coming by or to a shared residence)."

As a result of the events giving rise to the order, the defendant was charged with and convicted of domestic assault, and he was sentenced to probation. The defendant was also ordered to move out of the home that he shared with Ms. Daniel on Priest Lake Drive. On September 12, 2013, before the order of protection expired, Ms. Daniel filed a motion to extend it. On September 27, 2013, the court denied Ms. Daniel's motion for extension but decreed that the order of protection would "remain in effect until final adjudication of [the parties'] divorce proceeding." Two days after the hearing, Ms. Daniel called the police to report the defendant's alleged violation of the order of protection. On February 25, 2014, the Davidson County Criminal Court grand jury charged the defendant with one count of violating an order of protection. The divorce between the parties became final on July 1, 2014, and the order of protection expired. The probationary period for the defendant's domestic assault conviction continued throughout the events giving rise to the defendant's instant conviction and subsequent appeal. On August 14, 2014, the trial court conducted a bench trial on the defendant's alleged violation of the order of protection.

Having laid out the legal context of the dispute between the parties, we now review the evidence presented at trial. Ms. Daniel testified that on September 28, 2013, she was with Darryl Moore leaving the Harbor View Shopping Center around 4:00 p.m. Mr. Moore was driving the vehicle, and as they "back[ed] up from the store, [the defendant] approached – came from behind, which we gave eye contact, then I proceeded to go back to [the] home of 2883 Priest Lake Drive." The defendant was driving a "silver Mercedes Benz, his vehicle" and did not speak to Ms. Daniel or follow her home. On her way home, Ms. Daniel went "around to Priest Lake area . . . to Anderson Road." She saw the defendant "on the left of Edge-O-Lake" which was "[a] half a mile from the residence." She said that the defendant took an alternate route and "parked his car on the side of the road" and "had an object out of the car, like I didn't know what it was, so I went down . . . but it ended up being a cell phone because I seen it click." The defendant's car was half on and half off the road facing Ms. Daniel's car. The defendant came face-to-face with Mr. Moore. The part of Anderson Road where the defendant was parked did not have shoulders, and other cars behind him "would have to go around." Ms. Daniel said the defendant took a picture of her and Mr. Moore with a "flip phone" but made no gestures. She did not see the camera flash, and no pictures from this incident surfaced at trial or during the divorce proceedings. Mr. Moore was driving the speed limit and did not stop. Ms. Daniel did not "know if [she] called the cops that day or not" and was uncertain whether she went straight back to her house after the encounter. The defendant never came to the Priest Lake home that day.

Darryl Moore testified that he was driving with Ms. Daniel on September 28 when they encountered the defendant at the shopping plaza. They "just drove on" and "[d]idn't pay him no attention." Mr. Moore said they saw the defendant again at the

corner of Anderson and Edge-O-Lake when they were "leaving Priest Lake turning on to Anderson Road." The defendant "stopped in the middle of the street just sitting there post up like a light pole waiting on us to come past him." Mr. Moore said that, as they passed the defendant, "he rolled down his window and pointed an object at us, we ducked, we didn't know what it was." The car Mr. Moore was driving came face-to-face with the defendant's car during the encounter, but Mr. Moore did not stop and kept driving. Mr. Moore explained that the defendant's car was in the middle of Anderson Road "on the opposite side because like there is only like two sides to come down, one going down, and one coming up" and no shoulders to park on. Mr. Moore said he "went back around the other way" to the Priest Lake home to call the police but could not remember whether the call occurred on the same day as the encounter. Mr. Moore testified that, at the time of the incident, he was not living with Ms. Daniel and that they "were friends" but later became "a little bit more." At the conclusion of Mr. Moore's testimony, the State rested.

The defendant testified that he was married to Ms. Daniel and lived with her on Priest Lake Drive but moved out when the order of protection was issued against him. On September 28, 2013, the day after Ms. Daniel's motion to extend the order was denied, the defendant passed Ms. Daniel and Mr. Moore while pulling into Harbor View shopping area in his silver Mercedes around 4:00 p.m. He went into the store briefly and then went to a cookout on Edge Water Drive at his friend Darrell Allen's home located five blocks away from the shopping plaza. The defendant said that he did not pass the Priest Lake home and "never parked on Anderson Road." He "may have stopped to make the left-hand turn at Edge Water Drive" but never saw Ms. Daniel again. The left-hand turn was necessary in order to get to the cookout. The defendant said he arrived at the cookout around 4:30 p.m. and "[s]tayed on [Mr. Allen's] property until [departing] about 8, 8:30." The defendant agreed Anderson Road does not have shoulders or sidewalks and "is mainly . . . ditch area . . . on both sides."

The defendant learned Ms. Daniel was dating Mr. Moore from the Priest Lake neighbors "about a month after" he filed for divorce in 2012. On cross-examination, the defendant admitted that when he first learned his wife was dating again, he was "in disbelief." The Priest Lake neighbors had a motion-activated security system on their home long before the divorce that "snap[ped] pictures" and "video." The defendant said his Priest Lake neighbor gave him a disc with "some pictures" which indicated that Mr. Moore was living at his home with Ms. Daniel "back in 2012." He gave the disc to Ms. Daniel's attorney during the divorce proceedings. The divorce court had issued an order prohibiting Mr. Moore from living in the Priest Lake home. Additionally, the defendant hired a private investigator to obtain information for his divorce prior to the day of the incident and never took pictures himself. The defendant said he did not take pictures of Ms. Daniel and Mr. Moore on September 28 and did not

- 3 -

own a "flip phone" at this time.  He owned a Galaxy S3 "flat" screen phone but owned a "flip phone" two years prior and was teased by his friends because of his outdated phone.

The defendant testified that he learned of the alleged order of protection violation on September 29 when a neighbor informed him that the police had been at the Priest Lake home earlier that day.  On the following Wednesday, the defendant went to the police station to get a copy of the police report but was told he needed to pick up a summons in lieu of an arrest warrant in the warrant section.

On cross-examination, the defendant admitted that because of this incident, he was awaiting a subsequent hearing for a determination of the impact on his probation for the domestic assault conviction.  The defendant said that, until this alleged encounter with Ms. Daniel, he had complied with all of the terms of his probation stemming from the domestic assault conviction.

Darrell Allen testified that he had known the defendant for 17 years.  Mr. Allen invited the defendant to a cookout on September 28, 2013, at his home on Smith Spring Road off Anderson Road.  The defendant arrived at 4:30 p.m. and was "a little nervous" and "didn't like coming in here."  The defendant stayed at the cookout until 8:30.  Mr. Allen was familiar with the defendant's order of protection and knew the defendant was not supposed to be around the Priest Lake home.  Mr. Allen said Anderson Road was a public road and was the only route to his home from the Harbor View shopping plaza.  Mr. Allen helped the defendant's Priest Lake neighbor download photographs of Ms. Daniel and Mr. Moore from the security camera to give to the defendant.  In October 2013, Mr. Allen "had seen [Ms. Daniel] in the parking lot driving Mr. Moore's car," and he took a picture of Mr. Moore's license plate for the defendant.  Mr. Allen testified that the defendant never asked him to take pictures of Ms. Daniel but that he nevertheless took it upon himself.

Based upon the foregoing evidence, the trial court found a valid order of protection existed and convicted the defendant as charged of one count of violation of an order of protection.  Following a sentencing hearing, the trial court imposed a six-month sentence suspended to probation and ordered the sentence to be served consecutively to the defendant's sentence for the domestic assault conviction.  In addition, the trial court ordered the defendant to stay away from Ms. Daniel.  In this appeal, the defendant challenges both the trial court's interpretation of the order of protection and the sufficiency of the convicting evidence.

## I. Interpretation of the Order of Protection

The defendant challenges the language of the order of protection, arguing

that the order's directive that the defendant not "come about" Ms. Daniel or their "residence" was vague. He points to the trial court's rulings that the defendant "came about" Ms. Daniel at the shopping plaza and "came about" Ms. Daniel's residence while traveling to a cookout to illustrate that the language of the order of protection was ambiguous.

"'Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.'" *Hogue v. Hogue*, 147 S.W.3d 245, 249 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). No liability exists for violating a lawful court order "unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 355 (Tenn. 2008).[1] "The order must, therefore, be clear, specific, and unambiguous." *Id.* To support a conviction under Code section 39-13-113, the order of protection must not be "[v]ague," "ambiguous," or "susceptible to more than one reasonable interpretation," and should "leave no reasonable basis for doubt regarding their meaning." *Id.* at 356. "Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed." *Id.* Additionally, any ambiguities must be interpreted in favor of the accused. *See id.* "Determining whether an order is sufficiently free from ambiguity to be enforced . . . is a legal inquiry that is subject to de novo review." *Id.*

"Orders, like other written instruments, should be enforced according to their plain meaning." *Id.* at 359 (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). In consequence, we must "construe the language in the order in light of its usual, natural, and ordinary meaning." *Id.* (citing *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)).

The order of protection between the parties specified that the defendant "must not come about the [p]etitioner (including coming by or to a shared residence) for any purpose and must not contact . . . [p]etitioner . . . , either directly or indirectly, by phone, email, messages, text messages, mail or any other type of communication or contact." Construing the order using the "usual, natural, and ordinary meaning" of the words used, we hold that the order of protection at issue in the instant case is not

---

[1] Although the proceeding at issue in *Konvalinka* was the trial court's finding of civil contempt, the principles for interpreting the validity of the order remain the same. *See State v. Karen Ann Matthews*, No. M2010-02601-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Nashville, Aug. 26, 2011).

ambiguous. The order clearly instructed the defendant to refrain from coming about Ms. Daniel and coming by their previously shared residence, and an ordinary person would understand the order's prohibitions. Indeed, as the trial court observed, the defendant's testimony that he was "nervous being in that area" indicated that the defendant knew that his coming to the cookout near the Priest Lake residence was likely to result in his violating the order.

## II. Sufficiency

The defendant contends that the evidence presented at trial was insufficient to support his conviction of violation of an order of protection. The State contends any rational trier of fact could have found that the defendant violated the order of protection when he encountered Ms. Daniel and Mr. Moore on Anderson Road as he attempted to photograph them. We agree with the State.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn.Crim.App.2003). This standard applies to findings of guilt based on direct or circumstantial evidence or based on a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

When examining the sufficiency of the evidence, this court should not re-weigh evidence or substitute its inferences for those drawn by the trier of fact. *Winters,* 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, and factual issues raised by the evidence are always resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). This court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable inferences which may be drawn from the evidence. *Id*. "In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

As relevant to this case, a person commits the offense of violation of an order of protection when he "knowingly violate[s]" an order of protection. T.C.A. § 39-13-113(a)(1).

To prove a violation of this section, the State must establish that:

(1) The person must have received notice of the request for an order of protection or restraining order;

(2) The person must have had an opportunity to appear and be heard in connection with the order of protection or restraining order; and

(3) The court made specific findings of fact in the order of protection or restraining order that the person committed domestic abuse, sexual assault or stalking as defined in § 36–3–601.

Id. § 39–13–113(f). "'Domestic abuse' means committing abuse against a victim." *Id*. § 36-3-601(4).

"Abuse" means inflicting, or attempting to inflict, physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, malicious damage to the personal property of the abused party, including inflicting, or attempting to inflict, physical injury on any animal owned, possessed, leased, kept, or held by an adult or minor, or placing an adult or minor in fear of physical harm to any animal owned, possessed, leased, kept, or held by the adult or minor[.]

*Id*. § 36-3-601(1). "'Knowing' means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist" *Id*. § 39-11-106(a)(20).

The proof adduced at trial established that on September 28, 2014, Ms. Daniel and Mr. Moore encountered the defendant at Harbor View Shopping Plaza. Mr. Moore had to stop the vehicle as he was backing up in order to avoid hitting the defendant's car. After leaving the plaza, Ms. Daniel and Mr. Moore encountered the defendant again on Anderson Road, and the defendant attempted to take a photograph of them together in the car. The defendant did not deny that he was at the shopping plaza but claimed that the encounter was inadvertent. The defendant admitted he was traveling on Anderson Road to a cookout in close proximity to the shopping plaza and the Priest Lake home but denied that he saw Ms. Daniel.

Reviewing the interpretation of the order in the instant case, the record does not support the trial court's finding that the defendant violated the protective order when he "came about" Ms. Daniel in the shopping plaza and "came about" Ms. Daniel's residence while traveling to the cookout. Although the trial court acknowledged the

defendant encountered Ms. Daniel at the shopping plaza, the record does not support the contention that this encounter qualified as a "knowing" violation of the order of protection. Similarly, the record does not support the contention that the location of the cookout at Mr. Allen's home was proximate enough to Ms. Daniel's home to constitute the defendant "coming about Ms. Daniel's residence."

Viewing the evidence in the light most favorable to the State, however, we think the evidence is sufficient to show beyond a reasonable doubt that Mr. Daniel was guilty of knowingly violating the order of protection when he stopped his vehicle on Anderson Road and tried to take a picture of Ms. Daniel and Mr. Moore. The defendant was aware that a valid order of protection was in place forbidding him from "coming about" Ms. Daniel. The trial court believed the testimony of Ms. Daniel and Mr. Moore and did not find the defendant's cookout excuse to be credible. Questions concerning the credibility of the witnesses are always resolved by the trier of fact, *Cabbage*, 571 S.W.2d at 835, and this court should not re-weigh evidence or substitute its inferences for those drawn by the trier of fact, *Winters,* 137 S.W.3d at 655.

The defendant cites *Furlong v. Furlong*, 370 S.W.3d 329 (Tenn. Ct. App. 2011), wherein a defendant's conviction for violation of an order of protection was reversed after the court found he was driving on a public street and remained inside his car, did not stop, never left the road, and never made any gestures towards the petitioner. Although the facts of *Furlong* are similar to the defendant's case, they are not identical. Here, as discussed previously, the evidence is sufficient to establish the defendant "came about" Ms. Daniel and Mr. Moore when he stopped his vehicle on the side of the road for the purpose of taking pictures.

Because the evidence more than sufficiently established that the defendant knowingly violated the order of protection when he "came about" Ms. Daniel on Anderson Road, his conviction is affirmed.

*Conclusion*

The terms of the restraining order were not vague and unenforceable. The record does not support the trial court's interpretation that the defendant knowingly violated the order of protection when he encountered Ms. Daniel at the shopping plaza. Similarly, the record does not support the finding that the defendant "came about" Ms. Daniel's residence when he attended a cookout at Mr. Allen's home in violation of the protective order. The record supports, however, the finding that Mr. Daniel violated the order of protection due to his conduct on Anderson Road. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE