IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 29, 2015 Session

**SNS ELECTRICAL INSPECTIONS, P.C., ET AL. v. STATE OF TENNESSEE**

**Appeal from the Tennessee Claims Commission**
**No. K20121286    Nancy Miller-Herron, Commissioner, TN. Claims Commission,**
**Western Division**

_____

**No. W2015-00145-COA-R3-CV – Filed November 4, 2015**
_____

This is an appeal from the Tennessee Claims Commission involving a contract dispute. The Claims Commissioner concluded that the Appellants were not entitled to damages other than for services rendered because their services contract with the State was terminated for cause. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Bryant Beatty Kroll and William Gary Blackburn, Nashville, Tennessee, for the appellants, SNS Electrical Inspections, P.C., and Susan Newman Scearce.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; E. Ashley Carter, Assistant Attorney General; and William J. Marett, Jr., Senior Counsel, for the appellee, State of Tennessee.

**OPINION**

**Background**

In June 2011, Plaintiff/Appellant SNS Electrical Inspections, P.C. ("SNS Electrical") entered into a contract with the State of Tennessee Department of Commerce and Insurance ("State"). The contract was signed by Plaintiff/Appellant Susan Newman Scearce (together with SNS Electrical, "Ms. Scearce") on behalf of SNS Electrical.[1] Under the contract, Ms. Scearce was appointed to serve as a Deputy Electrical Inspector and was to perform various services for the State in that capacity. Among the duties outlined in the contract, Ms. Scearce was required to "conduct inspections of electrical installations in accordance with all applicable statutes (including but not limited to Tenn. Code Ann. § 68-102-143), rules and regulations of the State of Tennessee, and Instructions of the Commissioner of Commerce and Insurance, or her agents." The contract provided that it would be effective for the period from July 1, 2011, to June 30, 2016.

Although the contract was set to terminate in 2016, the contract could be terminated prematurely by the State either for convenience or for cause. Pursuant to the "for convenience" termination provision, the State could terminate the contract for any reason, provided that:

> The State shall give [Ms. Scearce] at least thirty (30) days written notice before the effective termination date. [Ms. Scearce] shall be entitled to compensation for satisfactory, authorized service completed as of the termination date, but in no event shall the State be liable to [Ms. Scearce] for compensation for any service which has not been rendered. Upon such termination, [Ms. Scearce] shall have no right to any actual general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

The above notice was not required, however, if the contract was terminated for cause:

> If [Ms. Scearce] fails to properly perform [her] obligations under this Contract in a timely or proper manner, or if [Ms. Scearce] violates any terms of this Contract, the State shall have the right to immediately terminate the Contract and withhold payments in excess of fair compensation for completed services. Notwithstanding the above, [Ms. Scearce] shall not be relieved of liability to the State for damages sustained by virtue of any breach of this Contract by [Ms. Scearce].

---

[1] The record is not clear as to Ms. Scearce's exact role in SNS Electrical. Suffice it to say, the parties throughout this litigation have treated Ms. Scearce and SNS Electrical as interchangeable. Accordingly, we refer to them collectively throughout this Opinion.

The contract also discussed the compensation owed to Ms. Scearce for performance. The contract provided, however, that:

> In no event shall the maximum liability of the State under this Contract exceed four hundred twenty-three thousand dollars ($423,000.00). . . .
>
> [Ms. Scearce] is not entitled to be paid the maximum liability for any period under the Contract or any extensions of the Contract for work not requested by the State. The maximum liability represents available funds for payment to [Ms. Scearce] and does not guarantee payment of any such funds to [Ms. Scearce] under this Contract unless the State requests work and [Ms. Scearce] performs said work. In which case, the Contractor shall be paid in accordance with the payment rates detailed in section C.3. The State is under no obligation to request work from [Ms. Scearce] in any specific dollar amounts or to request any work at all from [Ms. Scearce] during any period of this Contract.

In December 2011, Robert Sanders, a general contractor, filed a complaint against Ms. Scearce, alleging that she forged his name on three official documents related to the issuance of a non-standard electrical permit for an electrical project in Dyersburg, Tennessee ("the PolyOne Project"). The State reviewed the documents and concluded that they did not contain Mr. Sanders's signature. Ms. Scearce admitted that she had filled out the form in the contractor's name in some places but insisted that she did so in order to facilitate the project at the request of the permit issuing agent, Dyersburg Electric Service. Regardless, the State terminated the contract with Ms. Scearce by letter, effective immediately, on February 6, 2012.

On May 9, 2012, Ms. Scearce filed a notice of claim for damages against the State with the Tennessee Division of Claims Administration. On August 7, 2012, the claim was transferred to the Tennessee Claims Commission ("Claims Commission") pursuant to Tennessee Code Annotated Section 9-8-402(c).[2] Ms. Scearce claimed that the State breached the fee-for-service contract with her by failing to properly investigate frivolous claims against her, by depriving her of due process, and for terminating the contract without just

---

[2] Tennessee Code Annotated Section 9-8-402(c) provides that: "If the division [i.e., the Tennessee Division of Claims Administration] fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission."

3

cause. On September 6, 2012, the State answered, denying the material allegations contained therein.

On June 30, 2014, the State filed a motion for summary judgment, arguing that Ms. Scearce was not entitled to damages because the contract was terminated for just cause and, in any event, the contract did not entitle Ms. Scearce to any future compensation. The Claims Commissioner granted the motion for summary judgment on October 9, 2014, finding that Ms. Scearce had not performed services in accordance with the contract requirements because she had signed a contractor's name onto electrical inspection permits without his permission. Specifically, the Claims Commissioner found that although Ms. Scearce did not commit forgery, as there was no intent to defraud or harm another, Ms. Scearce violated the instructions of the Commissioner of Commerce and Insurance, or her agent, in doing so. The Claims Commissioner also found that there could be no damages, as the State had no obligation to request work from Ms. Scearce under the contract. The Claims Commissioner, however, concluded that Ms. Scearce was entitled to pay for work already completed. The Claims Commissioner entered a final order on January 15, 2015 awarding Ms. Scearce $6,500.00 in damages for work already completed and indicating that no claims remained to be adjudicated. Ms. Scearce appealed.

## Issue Presented

As we perceive it, this case involves one dispositive issue: Whether the Claims Commission properly granted summary judgment to the State on Ms. Scearce's breach of contract claim, and if not, to what damages, if any, is Ms. Scearce entitled?

## Standard of Review

Appeals from decisions by the Claims Commission are governed by the same rules applicable in appeals from trial court civil actions. Tenn. Code Ann. §9-8-403(a)(1) (noting that other than some specified exceptions, "the decisions of the individual commissioners . . . regarding claims on the regular docket may be appealed to the Tennessee court of appeals pursuant to the same rules of appellate procedure which govern interlocutory appeals and appeals from final judgments in trial court civil actions"). Because this case involves summary judgment, we utilize the summary judgment standard applicable in all trial court civil cases.

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. In cases where the moving party does not bear the burden of proof at trial, the movant may obtain summary judgment if it:

4

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (applying to cases filed after July 1, 2011); *see also* ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, --- S.W.3d ---, 2015 WL 6457768, at *22 (Tenn. Oct. 26, 2015) (judicially adopting a summary judgment parallel to the statutory version contained in Tenn. Code Ann. § 20-16-101). When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id.*** at 5; *see* ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997); ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this Court reviews a trial court's grant of summary judgment *de novo* with no presumption of correctness. *See* ***City of Tullahoma v. Bedford Cnty.***, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. ***Luther v. Compton***, 5 S.W.3d 635, 639 (Tenn. 1999); ***Muhlheim v. Knox. Cnty. Bd. of Educ.***, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See* ***White v. Lawrence***, 975 S.W.2d 525, 529 (Tenn. 1998); ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995).

## Analysis

The issues in this case involve whether the State was entitled to terminate the contract with Ms. Scearce for cause and whether Ms. Scearce could be entitled to any compensation for work that had not been performed under the contract. When a contract is not ambiguous, its interpretation is a question of law that is appropriate for summary judgment. ***Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton***, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012) ("Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment.") (citing ***Ross Prods. Div. Abbott Labs. v. State***, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2 (Tenn. Ct. App. Dec. 5, 2007), *perm. app. denied* (Tenn. Apr. 28, 2008)).

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." **Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.**, 78 S.W.3d 885, 890 (Tenn. 2002). The court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. **Allstate Ins. Co. v. Watson**, 195 S.W.3d 609, 611 (Tenn. 2006); **Staubach Retail Servs-Southeast LLC v. H.G. Hill Realty Co.**, 160 S.W.3d 521, 526 (Tenn. 2005). In construing a contract, the court is to determine whether the language is ambiguous. **Allstate Ins. Co.**, 195 S.W.3d at 611; **Planters Gin Co.**, 78 S.W.3d at 890. If the language in the contract is clear and unambiguous, then the "literal meaning controls the outcome of the dispute." **Allstate Ins. Co.**, 195 S.W.3d at 611; **City of Cookeville, TN v. Cookeville Regional Med. Ctr.**, 126 S.W.3d 897, 903 (Tenn. 2004); **Planters Gin Co.**, 78 S.W.3d at 890. "A contract term is not ambiguous merely because the parties to the contract may interpret the term in different ways." **Staubach**, 160 S.W.3d at 526. Here, neither party argues that the services contract at issue is ambiguous. Accordingly, we look only to the contract's plain language to determine its meaning.

On appeal, Ms. Scearce does not dispute that the services contract could properly be terminated for cause in the event that Ms. Scearce violated the terms of the contract, applicable statutes, rules or regulations, or the "Instructions of the Commissioner of Commerce and Insurance, or her agents." Ms. Scearce instead argues that nothing in her termination letter or the order of the Claims Commission specifically outlines any statutes, rules, or instructions that Ms. Scearce violated in placing Mr. Sanders's name on official documents to facilitate the approval of his electrical permits. The State contends, however, that the Claims Commissioner properly found that Ms. Scearce violated the "Instructions of the Commissioner of Commerce and Insurance, or her agents" by signing Mr. Sanders's name to several official documents without his permission, in violation of the instructions provided on the documents. The State thus asserts that termination with cause was proper and that Ms. Scearce is entitled to no compensation beyond that for completed services.

The record on appeal contains several official documents relating to the PolyOne Project. It is necessary that these documents be completed prior to the issuance of a non-standard electrical permit, the type of permit needed for the PolyOne Project. The forms are required to be signed by both the contractor, Mr. Sanders, and the electrical inspector, Ms. Scearce. All of the relevant forms contain the following language regarding the signature requirement:

> It is mutually confirmed by the Contractor and Inspector, as evidenced by the signatures below, that the fees and inspections itemized above are acceptable to both parties. If additional inspections are required, the above fees will still apply. All fees regarding this Non-Standard Fee shall be collected by the

6

Electrical Permit Issue Agent. It is further understood that this agreement is not valid until signed by both parties and a permit obtained from the issue agent.

Thus, the forms included a contractual element and were to be signed by the contractor to indicate his or her consent to the terms contained therein.

On at least two of the documents containing the above language, Ms. Scearce admitted to filling in Mr. Sanders's name in the portion of the form in which the contractor was required to sign. Ms. Scearce admitted that she did not have Mr. Sanders's express permission to affix his name to the forms and that she most likely did not inform him that she had done so. Instead, Ms. Scearce testified that she affixed Mr. Sanders's name to the forms upon request from the issuing agent because the non-standard permit could not be processed without all required information and that doing so would facilitate Mr. Sanders's project without increasing his liability in any way.

The Claims Commissioner specifically found that Ms. Scearce's action in affixing Mr. Sanders's name to the contractual portion of the forms without his consent was in direct violation of the instructions contained on the form. Specifically, the Claims Commissioner found:

> [C]ontrary to [Ms.] Scearce's deposition testimony, the Commission FINDS that she did not just print his name in the signature lines of the permit forms. In at least two places, she appears to have signed it. While there appears to be nothing criminal about her actions whatsoever, signing a form for the contractor without his permission (or even printing his name in the signature line) was not only poor judgment, but directly contrary to the "instructions of the Commissioner of Commerce and Insurance, or her agents."
>
> The Commission FINDS that there is no genuine issue of material fact regarding whether Claimant filled out the aforementioned permit forms without Mr. Sanders'[s] permission or regarding whether such action was contrary to the "instructions of the Commissioner of Commerce and Insurance, or her agents." The Commission therefore FINDS that Susan Newman Scearce, d/b/a SNS Electric, was fired for cause.

(Internal citations omitted).

7

In her brief, Ms. Scearce argues that "the State has not provided . . . any specific 'instructions' Ms. Scearce received and failed to follow. . . . No specific violations are stated because none exist." We respectfully disagree. As discussed above, the forms related to the PolyOne Project contain specific instructions requiring the signature of the contractor before the permits may be processed or issued. The forms clearly and unambiguously indicate that they are promulgated by the Department of Commerce and Insurance. Accordingly, the rules contained on the forms were appropriately considered "instructions of the Commissioner of Commerce and Insurance, or her agents." In her reply brief, however, Ms. Scearce argues that the instructions contained on the forms were not directed to Ms. Scearce, but instead to the permit issuing agent. From our review of the language contained on the forms, however, the directions are not simply directed to the permit issuing agent, but direct the contractor and the electrical inspector to sign as an affirmance of the terms contained therein. Indeed, there is no space on the form for the permit issuing agent to sign. Accordingly, the form appears to direct the contractor and the electrical inspector, rather than the permit issuing agent, to conform to its directives.

Furthermore, from the record, we agree with the Claims Commissioner that Ms. Scearce clearly violated the rules contained on the forms in affixing Mr. Sanders's name to the forms to facilitate processing of the permits, regardless of whether Mr. Sanders's name was printed or signed or whether Ms. Scearce's action was ultimately harmful. The forms promulgated by the Department of Commerce and Insurance clearly provided that the contractor's signature is required to ensure that the contractor agrees to the State's requirements with regard to the issuance of the permits and any associated fees. Despite this language, Ms. Scearce deprived Mr. Sanders of his right and duty to assent to the terms of the contract by submitting the forms to the issuing agent without first obtaining Mr. Sanders's permission to do so. Although Ms. Scearce testified without apparent dispute that Mr. Sanders had previously agreed to the fees that were to be collected (and indeed had already paid the fees), the fact remains that the forms clearly required the signature of both the contractor and the inspector. Submitting the forms as if Mr. Sanders had signed, when he in fact did not, was in violation of the clear instructions of the form. Nothing in the services contract at issue provides that for cause to exist to justify termination, a violation of any applicable statutes, rules, or instructions must be done with an improper motive or must cause harm to a third party.[3] The State can and should expect its contractors to follow its

---

[3] Although Ms. Scearce urges this Court to recognize that her actions in this case caused no prejudice to Mr. Sanders, we note that nothing in Ms. Scearce's appellate brief can be fairly read to argue that the breach in this case was immaterial, and therefore, insufficient to justify termination of the contract. In addition, there is no legal authority contained in Ms. Scearce's appellate brief to support an argument that her actions did not constitute a material breach of the contract. Accordingly, this issue is waived. *See Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn. Ct. App. 2009) ("The appellate court may treat issues that are not raised on appeal as being waived.").

instructions as to how official duties are to be carried out. Failing to do so, without sufficient justification, is sufficient in this particular case to support the termination of the services contract. Here, Ms. Scearce failed to comply with the Commissioner of Commerce and Insurance's instructions in submitting the forms without obtaining Mr. Sanders's consent to the terms contained therein; as such, Ms. Scearce violated the express terms of the services contract and termination for cause was appropriate.

Ms. Scearce next argues that the Claims Commission erred in relying on the violation of an instruction from the Commissioner of Commerce and Insurance when the termination letter received by Ms. Scearce indicates that her termination was for violations of regulations. From our review of the termination letter, Ms. Scearce's termination is based upon her action in "violating terms and conditions specified in Section A.2.b. **and** administrative rules (Chapter 0780-02-01-.04(1)(a) and (b))." (Emphasis added). Although there is no allegation in this case that Ms. Scearce violated any applicable administrative rules, Section A.2.b clearly requires that Ms. Scearce conduct herself "in accordance with all Instructions of the Commissioner of Commerce and Insurance, and her agents." Accordingly, the termination letter provides notice that the contract was being terminated on the basis of Ms. Scearce's failure to follow applicable instructions.

Based on the foregoing, we conclude that the Claims Commissioner did not err in granting summary judgment to the State on the ground that the undisputed facts show that the services contract was terminated for cause. The plain language of the services contract provides that upon a termination for cause, Ms. Scearce will be entitled to nothing more than fair compensation for completed services, which the parties agreed amounted to $6,500.00. Any issue regarding any damages due under the contract had it been terminated improperly is, therefore, pretermitted.

**Conclusion**

The judgment of the Tennessee Claims Commission is affirmed, and this cause is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellants SNS Electrical Inspections, P.C. and Susan Newman Scearce, and their surety.

_____
J. STEVEN STAFFORD, JUDGE

9