IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 3, 2017

## TIMOTHY ALAN PORTICE v. ROSHAWNDA LYNN FOSTER PORTICE

**Appeal from the Circuit Court for Campbell County**
**No. 15795    John D. McAfee, Judge**

————————————————————

**No. E2016-01682-COA-R3-CV**

————————————————————

This case involves a post-divorce motion for contempt. In her motion, Appellant/Wife averred that Appellee/Husband was in violation of the final decree of divorce. The trial court did not find Appellee in contempt, but entered an order enforcing its final decree of divorce regarding sale of the marital residence, Appellant's access to the marital residence, and division of Appellee's 401-K. The trial court also declined to award Appellant half of Appellee's 2015 tax return. Because the trial court's order, on the motion for contempt, appears to deviate from its previous order regarding division of Appellee's 401-K, we reverse this portion of the trial court's order. The order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and W. NEAL MCBRAYER, JJ., joined.

Stephen H. Byrd, Knoxville, Tennessee, for the appellant, Roshawnda Lynn Foster Portice.

Timothy Alan Portice, Caryville, Tennessee, pro se.

## OPINION

## I. Background

On March 17, 2016, Appellant Roshawnda Lynn Foster Portice ("Wife") and Appellee Timothy Alan Portice ("Husband") were divorced by final decree of the Circuit

Court for Campbell County. As is relevant to this appeal, the final decree of divorce states:

> 7. That the marital home and adjoining property will be sold and the equity equally divided by the parties. The home will be immediately placed on the market for sale with a Relator agreed upon by the parties at a sale price suggested by the Realtor. The asking price may be modified as suggested by the Realtor. The Husband will continue to reside in the home and be responsible for the mortgage payments on the home, until it is sold. The Husband will, additionally, make necessary repairs as recommended by the realtor to make the home marketable. . . .

> ***

> 9. That Wife shall receive one half (1/2) of the Husband's retirement existing at the time of the divorce. . . . The Husband shall provide the Wife the information necessary to prepare a Qualified Domestic Relations Order to transfer funds into Wife's name. The Wife's attorney shall be responsible for preparation of the QDRO.

In addition to the foregoing provisions, the final decree divided certain marital property and ordered Husband to pay Wife transitional alimony of $1,000 per month for 24 months.

On June 6, 2016, Wife filed a motion for contempt, alleging that Husband was in violation of the final decree of divorce. Specifically, Wife averred that:

> 2. [Husband] was to begin repairs on the marital home in preparation for sale immediately. . . . A realtor must be agreed upon between the parties. [Husband] has not cooperated in making the repairs or even in discussing potential candidates as a realtor. Months have passed since the Judgment and the immediacy requirement has certainly not been met at this juncture. . . .

> 3. [Wife] has attempted many times to schedule with the [Husband] to obtain various items located at the marital home that she was awarded in the Final Judgment of Divorce since the December 14, 2015 hearing.

> 4. [Husband] appears to have filed his 2015 tax return with the status of Married Filing Jointly in order to obtain a better tax refund. He has not provided a copy of the return that affects [Wife's] tax returns nor has he sent one-half of the refund as part of dividing marital assets.

- 2 -

***

8. [Husband] has not provided [Wife] with the information necessary to prepare the Qualified Domestic Relations Order (QDRO) needed to transfer one-half of [Husband's] retirement existing at the time of divorce entry to [Wife]. . . . Moreover, [Husband] has not provided information on his separate 401-K retirement plan from his work that is personal property to be divided equally according to the Judgment. . . .

***

11. Since the divorce hearing in December, [Husband] has attempted to use [Wife's] social security number and Comcast account to obtain home security and cable television at the marital home.

The trial court heard Wife's motion for contempt on July 7, 2016. The appellate record does not contain a transcript of the hearing. On July 18, 2016, the trial court entered an order on the motion for contempt, wherein it stated, in relevant part:

1. Mr. Portice has 6 months to sell the marital home . . . . Moreover, Mr. Portice has 30 days to obtain a realtor. If the home is not sold within 6 months, the court clerk shall sell the home. Ms. Portice has the right to obtain an appraiser for the home.

2. Ms. Portice shall have access to the marital home [to] retrieve personal belongings on July 16, 2016 at 9:00 a.m.

***

7. Mr. Portice shall provide Ms. Portice information required . . . for Ms. Portice's counsel to draft a . . . QDRO.

8. Mr. Portice's 401-K retirement plan shall not be apportioned as part of the personal property split . . . because the asset was not specifically addressed by either party in the negotiations for divorce.

The trial court reserved ruling on the issue concerning the 2015 Federal Income Tax return and the issue concerning Husband's alleged use of Wife's social security number after the divorce. On August 25, 2016, the trial court entered its final judgment, wherein it found, in relevant part, as follows:

6. The Court deemed the 2015 Federal Income Tax refund the property of Tim Portice because the asset was not specifically addressed by either party

- 3 -

in the negotiations for divorce.

7. The Court made no action against Tim Portice relating to Tim Portice's attempt to use Ms. Portice's social security number and Comcast account to obtain a home security system and cable television at the marital home because Ms. Portice had not suffered any monetary damages.

Wife appeals.

## II. Issues

Appellant raises five issues for review, as stated in her brief:

1. Did the trial court have the authority to make an order that was in conflict with the agreed Final Judgment of Divorce relating to the sale of the marital home?

2. Did the trial court have the authority to deny the Appellant part of the Appellee's 401-K Retirement Plan in conflict with the Final Judgment of Divorce?

3. Did the trial court err[] by not allowing Appellant access to the marital personal property and her belongings in the marital home to apportion them with the Appellee as required by the agreed upon Final Judgment of Divorce?

4. Did the trial court have the authority to deny the Appellant her portion of the 2015 Federal Income Tax Refund that was received by the Appellee while the parties were still married?

5. Did the trial court err in not holding Appellee in contempt of court for committing identity theft against the Appellant by using her social security number and name after the divorce was final?

## III. Standard of Review

Because this case was tried by the court sitting without a jury, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates against those findings. *McGarity v. Jerrolds*, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013); *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, the weight of the evidence must "demonstrate... that a finding of fact other than the one found by the trial court is more probably true." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015); *The*

***Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court conducts a de novo review of the trial court's resolutions of question of law, with no presumption of correctness. ***Kelly v. Kelly***, 445 S.W.3d 685, 691-92 (Tenn. 2014); ***Armbrister v. Armbrister***, 414 S.W.3d 685, 692 (Tenn. 2013).

As an initial matter, we reiterate that the appellate record does not contain a transcript of the hearing on the motion for contempt. Rather, the record contains what purports to be Appellant's Tennessee Rule of Appellate Procedure 24(c) statement of the evidence. However, after reviewing this document, we conclude that it does not comport with Tennessee Rule of Appellate Procedure 24(c) in that it does not "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." A "statement of the evidence" should be just that—a statement of the evidence adduced at the hearing. Here, Appellant's filing is a reiteration, verbatim, of her appellate arguments as set out in her brief. Accordingly, Appellant's purported statement of the evidence, does not provide this Court with any evidentiary basis to review what actually transpired at the hearing on the motion for contempt. The Court of Appeals, being an appellate court, operates with the record created by the litigants in the trial court. When there is no transcript or statement of the evidence, we cannot know what the testimony in the trial court was. Thus, generally, when the appellant does not file a transcript or statement of the evidence, the appellate court presumes that the trial court's decision is supported by sufficient evidence. ***Outdoor Mgmt., LLC v. Thomas***, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007).

## IV. Analysis

In her first four issues, Appellant contends that the trial court violated its previous final decree of divorce in ruling on the motion for contempt. Specifically, Appellant argues that the trial court deviated from the holdings, in its March 17, 2016 order, concerning: (1) the sale of the marital residence; (2) Appellant's access to the marital residence to obtain property awarded to her in the divorce; (3) the division of the 2015 Federal Income Tax refund; and (3) the division of Appellee's 401-K.. It is axiomatic that, "[i]n addition to any statutory authority provided, a court has inherent judicial authority to enforce its own orders and may compel compliance with them or issue appropriate additional orders to make the granted relief effective." 56 Am. Jur. 2d Motions, Rules, and Orders § 57 (2017). Concerning the interpretation of a court order, the Tennessee Supreme Court has held that:

> Orders, like other written instruments, should be enforced according to their plain meaning. *See **Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn.1975). Thus, courts called upon to interpret orders should construe the language in the order in light of its usual, natural, and ordinary meaning. *See **Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.***, 160 S.W.3d 521, 526

(Tenn.2005); ***Planters Gin Co. v. Fed. Compress & Warehouse Co.***, 78 S.W.3d 885, 889-90 (Tenn. 2002). If the language in an order is clear, then the literal meaning of the language in the order controls. *See **Allstate Ins. Co. v. Watson***, 195 S.W.3d 609, 611 (Tenn. 2006); ***Teter v. Republic Parking Sys., Inc.***, 181 S.W.3d 330, 342 (Tenn. 2005). Litigants are entitled to rely on the reasonable interpretation of orders, and the use of the "plain and ordinary meaning" standard to interpret orders assures that litigants will be treated fairly. *See **Turman v. Boleman***, 235 Ga. App. 243, 510 S.E.2d 532, 534 (1998); ***Campen v. Featherstone***, 150 N.C.App. 692, 564 S.E.2d 616, 619 (2002); *see also **State v. Phillips***, 138 S.W.3d at 229-30.

***Konvalinka v. Chattanooga-Hamilton County Hosp. Authority***, 249 S.W.3d 346, 359 (Tenn. 2008).

Concerning the sale of the marital residence, the March 17, 2016 order states that the marital "home will be immediately [] placed on the market for sale with a Realtor agreed upon by the parties . . . ."  In her motion for contempt, Wife avers that Husband violated the "immediacy requirement" contained in the final decree of divorce by not cooperating in selecting a realtor and putting the house on the market.  In ruling on her motion for contempt, the trial court appears to simply enforce its previous order, stating that "Mr. Portice has 6 months to sell the marital home," and "30 days to obtain a realtor."  The trial court did not deviate from its March 17, 2016 order because the substantive holding, i.e., that the marital residence would be sold, remains unchanged. The order on the motion for contempt simply enforces the trial court's previous order by setting a specific timeframe for procurement of a realtor and selling the house.  Because the trial court has inherent power to issue "appropriate additional orders to make the granted relief effective," 56 Am. Jur. 2d Motions, Rules, and Orders § 57, we cannot conclude that the trial court erred in enforcing its final decree of divorce by subsequently ordering a realtor to be named within 30 days and the marital home to be sold within 6 months.

Concerning Appellant's argument that the trial court deviated from its March 17, 2016 order "by not allowing Appellant access to . . .  her belongings in the marital home."  Despite Appellant's contention, in ruling on her motion for contempt, the trial court specifically held that "Ms. Portice shall have access to the marital home [to] retrieve personal belongings on July 16, 2016 at 9:00 a.m."  From this plain, unambiguous language, the trial court's holding clearly allows Wife access to the marital home to retrieve her personal belongings.  Accordingly, Appellant's contention that the trial court denied her "access to the marital personal property and her belongings in the marital home" is not supported by the record.

- 6 -

Turning to Appellant's argument that the trial court erred in denying her a portion of Appellee's 2015 Federal Income Tax refund, in its order on the motion for contempt, the trial court held that the 2015 tax return was Husband's property "because the asset was not specifically addressed by either party in the negotiations for divorce." Indeed, the final decree of divorce is silent concerning the parties' tax return(s); accordingly, there was nothing for the trial court to enforce, *vis-à-vis* the tax returns, in its order on the motion for contempt. Furthermore, because there is no transcript or statement of the evidence adduced at the hearing on the motion for contempt, there is nothing for this Court to review so as to determine whether the evidence preponderates against the trial court's finding that the 2015 tax return is Husband's property.

Concerning Appellant's argument that the trial court deviated from the March 17, 2016 final decree of divorce in denying Wife her share of Husband's 401-K, the final decree of divorce provides that "Wife shall receive one half . . . of Husband's retirement existing at the time of the divorce." However, in its July 18, 2016 order on the motion for contempt, the trial court states that: "Mr. Portice's 401-K retirement plan shall not be apportioned as part of the personal property split . . . because the asset was not specifically addressed by either party in the negotiation for divorce." In this regard, the July 18, 2016 order appears to conflict with the trial court's March 17, 2016 final decree of divorce. "Orders, like other written instruments, should be enforced according to their plain meaning." ***Konvalinka***, 249 S.W.3d at 359 (citation omitted). Based on the plain language used in its July 18, 2016 order, we conclude that the trial court deviated from its March 17, 2016 ruling in denying Wife one-half of Husband's 401-K in the subsequent order. The trial court's July 18 order does not explain why it may have deviated from its previous ruling, and, again, there is no transcript or statement of the evidence adduced at the hearing on the motion for contempt. Based strictly on the language employed by the trial court in the two orders, *supra*, we conclude that the trial court failed to enforce its original order. We, therefore, reverse the trial court's July 18, 2016 order concerning the division of Appellee's 401-K.

In her final issue, Appellant argues that the trial court erred in not holding Husband in contempt for his alleged use of Wife's social security number to open accounts after the divorce. Tennessee courts have the inherent authority and discretion to punish for acts of contempt. ***Reed v. Hamilton***, 39 S.W.3d 115, 117 (Tenn. Ct. App. 2000). However, a court's authority to hold a party in contempt is limited to the conduct described in Tennessee Code Annotated Section 29-9-102, which provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

(2) The willful misbehavior of any of the officers of such courts, in their official transactions;

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4) Abuse of, or unlawful interference with, the process or proceedings of the court;

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6) Any other act or omission declared a contempt by law.

Here, Appellant alleged that, "since the divorce. . .," Husband was in contempt for "attempting to use Roshawnda's social security number . . ." Taking Appellant's allegation as true, Appellee's act does not provide an appropriate basis for a finding of contempt. The trial court's March 17, 2016 order does not address Appellee's alleged use of Appellant's social security number, nor is such conduct one of the grounds for contempt enumerated in Tennessee Code Annotated Section 29-9-102. Accordingly, had the trial court found Appellee in contempt for such conduct, we would reverse that finding under an abuse of discretion standard, finding that the trial court had applied an incorrect legal standard. Here, however, the trial court refused to find Appellee in contempt based on Appellant's lack of monetary damages. The trial court reached the correct result, i.e., a finding of no contempt, but its reasoning is flawed because Appellant had no basis for relief, under the contempt mechanism, for Appellee's alleged use of her social security number. This Court will affirm a decree correct in result, but rendered upon different, incomplete, or erroneous grounds. ***Hopkins v. Hopkins***, 572 S.W.2d 639, 641 (Tenn.1978).

## V. Conclusion

For the foregoing reasons, we reverse the trial court's July 18, 2016 order to the extent that it holds that Appellee's 401-K will be awarded as Appellee's separate property. The order is otherwise affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Rashawnda Lynn Foster Portice and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE